JUAN ANDRÉS DAMIANI MONTALBÁN ET ALS., demandantes y recurrentes, *v.* CENTRO COMERCIAL PLAZA CAROLINA ET ALS., demandados y recurridos.

*Número:* RE-86-415          *Resuelto:* 19 de febrero de 1993

*Francisco Agrait Oliveras*, abogado de los demandantes y recurrentes; *David Rivé Rivera*, abogado de los demandados y recurridos.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

En *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294 (1990), examinamos cómo, a manera de excepción, una institución educativa podía ser responsable por los daños sufridos por una estudiante dentro de las facilidades de dicha institución debido a la conducta criminal intencional de un tercero. Hoy nos toca resolver, también a manera de excepción, si un centro comercial regional (*shopping center*) podría ser responsable por los daños intencionales causados a las personas que frecuentan dicho centro por la conducta criminal intencional de un tercero. Esto entraña determinar si la actividad llevada a cabo por el centro comercial regional (*shopping center*), por su naturaleza esencial, crea un deber de ofrecer un grado de protección y seguridad independiente del que puedan ofrecer las agencias de seguridad pública.

I

*Los hechos*

.El viernes 2 de diciembre de 1983 la codemandante Z.D.V.,([1]) de dieciséis (16) años de edad, acudió en compañía de una amiga al Centro Comercial Plaza Carolina (en adelante Plaza Carolina) alrededor de las siete (7:00) de la noche, con el propósito de hacer unas compras. Dicho centro comercial tenía una campaña publicitaria exhortando a las personas a acudir a visitar sus tiendas. Como a las 8:30 de la noche, luego de hacer las compras, decidieron marcharse. Se dirigieron a buscar transportación al frente de la tienda J.C. Penney, lugar donde se cogen las guaguas y carros públicos ubicado dentro del área de estacionamiento de Plaza Carolina. Estando en la acera frente a la susodicha tienda, se les acercó un joven, quien abrazó a Z.D.V. Poniéndole un puñal en el cuello, le ordenó a ella y a su amiga que caminaran. Ellas así lo hicieron cruzando el estacionamiento del centro comercial y dos avenidas hasta llegar a un pastizal debajo de un puente. Esta caminata duró aproximadamente media hora. Durante todo este tiempo el individuo mantuvo a Z.D.V. amenazada con el puñal y a su amiga agarrada. Al llegar al pastizal, el sujeto cometió actos lascivos e impúdicos con ambas niñas reteniéndolas en ese lugar por varias horas. Luego se dio a la fuga.

Por estos hechos, los padres de Z.D.V., por sí y en representación de la menor, instaron una acción por daños y perjuicios contra la aquí demandada, imputándole responsabilidad alegando que los hechos se debieron a su falta de proveer vigilancia y seguridad adecuada para proteger a sus invitados comerciales.

---

([1]) Para proteger la privacidad de las víctimas, estamos utilizando iniciales para identificarlas.

Luego de finalizar el periodo de descubrimiento de prueba, la parte demandada presentó una moción de sentencia sumaria alegando que no podían ser responsables por un acto criminal llevado a cabo por un tercero. Acompañó dicha moción con copias de dos (2) sentencias emitidas por el Tribunal Superior, una de la Sala de San Juan y la otra de la Sala de Bayamón.([2]) En éstas, el tribunal desestimó sendas acciones por daños y perjuicios contra Burger King al ser los demandantes heridos en un asalto perpetrado a dicho establecimiento. No se incluyó otro documento en apoyo de la moción.

Los demandantes presentaron oposición a la moción de sentencia sumaria, alegando que la parte demandada les era responsable, ya que el acto criminal intencional llevado a cabo en el área del centro comercial, por el tercero, era un acto previsible debido al conocimiento que tenía dicha demandada de la alta incidencia criminal en el área de Plaza Carolina. Continuaron alegando que tanto era esto así, que este hecho había llevado a los dueños del centro comercial a crear la corporación codemandada, Plaza Carolina Security Corporation, para ofrecer vigilancia y seguridad a las personas que acudían al centro comercial. Alegaron, además, que los demandados fueron negligentes al ofrecer este servicio. Acompañaron la oposición con dos (2) tablas estadísticas para los años 1982, 1983 y parte de 1984, que ofrece la Policía de Puerto Rico sobre Delitos Tipo I([3]) en el Sector 932 de Carolina. En este sector se encuentra Plaza Carolina. También apoyaron su oposición con una copia de varias noticias de diferentes periódicos locales en las que se informa de un robo y de un secuestro, ambos delitos cometidos en el estacionamiento del centro comercial

---

([2]) Estas decisiones se acompañaron aparentemente con carácter persuasivo.

([3]) Los Delitos Tipo I incluyen: asesinato, homicidio, violación, robo, agresión agravada, escalamiento, apropiación ilegal y hurto de auto.

aludido. Entre éstas, se incluyó un artículo sobre la incidencia criminal en la Isla.

El tribunal de instancia acogió la solicitud de sentencia sumaria de la parte demandada y desestimó la demanda. Determinó, entre otras cosas, que los dueños de negocios no pueden evitar este tipo de asalto, aunque éstos fueran previsibles, particularmente cuando los mismos ocurren en un área pública en los alrededores de los establecimientos. También expresó que no se le puede exigir a los dueños de negocios que controlen la violencia y el crimen que el propio Estado no puede controlar, y que el acto ocurrido no está enmarcado dentro del principio de previsibilidad.

La parte demandante presentó una moción de reconsideración y de sentencia sumaria. Acompañó con dicha moción los interrogatorios que sometió a la parte demandada, las contestaciones a los mismos y el contrato suscrito por Plaza Carolina Security Corporation y The Wackenhut Corporation.(4) El tribunal la denegó.

Oportunamente, la parte demandante presentó un recurso de revisión alegando los errores siguientes:

> ██ ... Erró el Honorable Tribunal de Carolina al declarar con lugar una Moción de Sentencia Sumaria radicada por la parte demandada basada en que la prueba ofrecida por la parte demandante no estableció una causa de acción contra los demandados, cuando en efecto la prueba en que basó su Solicitud de Sentencia Sumaria la parte demandada justifica plenamente que se dicte Sentencia contra la parte demandada.
> ██ ... Erró el Honorable Tribunal Superior de Carolina al no dictar Sentencia contra la parte demandada a base de la prueba que ofreció la parte demandada como los hechos incontrovertidos de este caso, cuando dicha prueba establece claramente que la parte demandada fue negligente y que su negligencia contribuyó a la ocurrencia de los daños sufridos por la parte demandante.

---

(4) Estas dos (2) corporaciones ofrecían el servicio de seguridad a Plaza Carolina.

Antes de considerar la corrección de la sentencia, es indispensable exponer la trayectoria jurisprudencial relativa a la responsabilidad que podría tener un establecimiento por los actos delictivos cometidos por terceros en sus predios, no sin antes exponer un trasfondo sobre los centros comerciales.

## II

### *Los centros comerciales en Puerto Rico*

El Departamento de Comercio define centro comercial como una "[s]erie de unidades comerciales independientes, físicamente separadas en un mismo edificio, pero integradas con el propósito de brindar una oferta complementaria de bienes y servicios".[5] Estos centros se clasifican a base de su tamaño o área de construcción. Hay cuatro (4) tipos de centros: vecinales de 2,000 a 34,999 pies cuadrados; comunales de 35,000 a 99,999 pies cuadrados; subregionales de 100,000 a 249,000 pies cuadrados, y regionales que tienen un área mayor de 250,000 pies cuadrados.[6]

Cabe señalar que el edificio que alberga las unidades comerciales y de servicio es administrado independientemente de éstas. A tenor con las estadísticas recopiladas por el Departamento de Comercio de 1974 a 1979,[7] las ventas totales generadas por los centros comerciales en Puerto Rico ascendieron a aproximadamente dos mil ciento noventa y seis millones de dólares ($2,196,000,000). De este total, el ochenta y seis punto noventa y dos por ciento (86.92%) fue generado en el Area Metropolitana.

---

[5] *Los centros comerciales en Puerto Rico*, Estudio de la Secretaría Auxiliar de Economía y Planificación del Departamento de Comercio, Parte II, pág. 3.

[6] De la definición de centro comercial se excluyen las plazas de mercado, los distintos centros comerciales tradicionales y las tiendas por departamento. *Compendio de estadísticas sobre centros comerciales en Puerto Rico del Departamento de Comercio*, junio 1979.

[7] No hemos podido localizar estadísticas más recientes.

Los grandes centros comerciales, los regionales y subregionales, ofrecen todo tipo de servicios complementarios, tales como bancos, restaurantes, sitios de comida ligera, centros de juegos de diversión y cines, entre otros. En estos modernos centros de mercadeo, bajo techo y equipados con aire acondicionado y amplio estacionamiento, en ocasiones, debido a las facilidades de acceso y comodidades que les brindan a las personas en la comunidad, también se ofrecen servicios gubernamentales, tales como correo, facilidades para el pago de facturas de agua, luz y teléfono, la obtención de documentación oficial, como pasaportes, etc. Con el propósito de atraer al mayor número de personas posible, estos centros comerciales periódicamente ofrecen espectáculos y atracciones no sólo comerciales, sino también artísticas, educativas, deportivas y cívicas. La combinación de todos estos factores ha hecho que en ocasiones los centros comerciales hayan venido a sustituir las plazas públicas y otros centros de reunión en las comunidades.

No cabe la menor duda que, con relación a los centros comerciales regionales, por la variedad de actividades que allí se llevan a cabo y el cúmulo de servicios que se ofrecen, o sea, por su naturaleza esencial, éstos están obligados a ofrecer al público que los frecuenta, cuando las circunstancias así lo ameritan, un grado de protección y seguridad, adecuado y razonable, independiente del que puedan ofrecer las agencias de seguridad pública. Como más adelante expondremos, el grado de protección dependerá de las circunstancias particulares de cada caso.

El centro comercial Plaza Carolina, donde ocurrieron los hechos que dieron lugar a la reclamación que hoy nos ocupa, tiene aproximadamente un millón (1,000,000) de pies cuadrados y es, por lo tanto, un centro comercial regional.[8]

---

[8] *Los centros comerciales en Puerto Rico, op. cit.*, pág. 13.

# III

*La jurisprudencia en Puerto Rico sobre la responsabilidad civil por actos delictivos de un tercero*

En *Cruz Costales v. E.L.A.*, 89 D.P.R. 105 (1963), sostuvimos la responsabilidad del Estado por los daños sufridos por un estudiante de quince (15) años que fue agredido con un machete por una persona ajena a la escuela mientras el maestro se encontraba fuera del salón. En este caso expresamos lo siguiente:

> En el caso de autos ... hay que conceder que la causa interventora fue imprevisible y extraordinaria. Esa circunstancia dentro de otro cuadro de hechos seguramente hubiese relevado de culpa al demandado pero creemos que la causa legal del daño fue la ausencia, que nunca fue explicada, del maestro del salón de clases porque si el maestro hubiese estado presente es muy probable que hubiese podido evitar el acto torticero .... Concluimos que ... la ausencia del maestro fue la causa legal del daño porque la acción del tercero interventor (en este caso el intruso) no fue súbita e imposible de prever ... sino que hubo algún tiempo disponible en que el maestro pudo haber evitado la lesión si hubiese estado presente. Como se sabe hay circunstancias en que la causa interventora releva de responsabilidad al demandado y hay también circunstancias en que no lo releva. *Cruz Costales v. E.L.A.*, supra, págs. 113–114.

En *Pabón Escabí v. Axtmayer*, 90 D.P.R. 20 (1964), decidimos que el daño ocasionado a un huésped de un hotel por unos asaltantes era razonablemente previsible, razón por la cual era responsable el dueño del hotel al éste ser negligente por no proveer protección a sus huéspedes. Expresamos "que la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias debieron ser previstas, que lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase y que la responsabilidad no depende de si en el ejercicio de razonable diligencia el demandado previó o debió prever el daño es-

pecífico reclamado; que no es necesario que el demandado haya anticipado el daño específico imputádole o que haya anticipado que dicho daño iba a ocurrir en la forma precisa en que ocurrió". Íd., pág. 25.

En *Estremera v. Inmobiliaria Rac., Inc.*, 109 D.P.R. 852 (1980), decidimos que el dueño de un edificio no era responsable por el asesinato de un mensajero cometido en las escaleras de dicho edificio por un asaltante. Al eximirlo de responsabilidad expresamos que "[e]l incremento de la violencia, el reto del criminal a la paz y sosiego del pueblo y la creciente probabilidad de que una persona sea víctima de un atentado contra su vida, su libertad o su propiedad, es una enfermedad del medio ambiente en que las personas nacen, se educan, trabajan o simplemente existen. Es condición o circunstancia de la atmósfera general en que se desarrolla la gestión vital de cada miembro de la sociedad; y es, primordialmente, problema de seguridad pública y responsabilidad del Estado, la única entidad con los recursos y la fuerza necesarios para mantener la paz y la majestad de la Ley. Si tal es el ámbito en que se vive y se contrata, y tal la indefensión del pueblo contra ese tercero violento, los contratantes no pueden ser responsables de la irrupción del crimen en el campo de sus negocios, a menos que éstos sean de los que, por su naturaleza esencial, vengan obligados a ofrecer un grado de protección y seguridad independiente del que puedan proveer las agencias de seguridad pública. Así, el hotel, que básicamente duplica el hogar, el hospital y la escuela, sin agotar la lista, vienen obligados a mantener unas medidas razonables de seguridad en protección de sus huéspedes, pacientes y estudiantes, que no tienen que suplir otros contratantes y empresarios, cuya actividad no absorbe necesariamente, en el ámbito de ejecución del contrato, la protección de partes y terceros contra ataques criminales." (Escolio omitido.) Íd., págs. 855–856.

Al determinar que no había nexo causal entre la tar-

danza de la demandada en reponer la bombilla que alumbraba la escalera y el asesinato del mensajero, expresamos que "[d]icha omisión no constitu[ía] conducta afirmativa que aument[ara] considerablemente el riesgo de daño al demandante por el acto criminal de un tercero, *en cuyo caso podría imponerse responsabilidad al demandado*". (Énfasis suplido.) *Estremera v. Inmobiliaria Rac., Inc.*, supra, pág. 857. En otras palabras, la norma de responsabilidad dependerá de la concurrencia de una omisión que constituya conducta afirmativa que aumente el riesgo de daño y que sea razonablemente previsible la ocurrencia del daño, por lo que se crea un deber de prevenirlo. Al explicar en la opinión que de acuerdo con el tratadista Prosser,[9] como regla general no es anticipable un acto criminal, se señala en una nota al calce que "[s]e dan, no obstante, otras situaciones en las que recae sobre el demandado una responsabilidad especial por la protección del demandante, o en las que una tentación u oportunidad especial de conducta criminal propiciadas por el demandado, le imponen la obligación de tomar precauciones contra ellas. La responsabilidad por protección puede surgir de un contrato mediante el cual el demandado se ha obligado a proveerla; o puede fundarse en alguna relación entre las partes, como porteador y pasajero, hotelero y huésped, *invitante y visitante en negocios*, escuela y discípulo, patrono y empleado, arrendador y arrendatario, y sin duda, otros más. En todas estas situaciones, sin embargo, habrá responsabilidad sólo si el demandado es negligente en no tomar precauciones contra el posible criminal; esto es, si el riesgo previsible es de dimensión irrazonable comparado con el peso de tomarlas". (Énfasis suplido.) *Íd.*, pág. 858 esc. 6.[10]

---

[9] W.J. Prosser, *The Law of Torts*, 4ta ed., Minnesota, West Publishing Co., 1971, págs. 173–174.

[10] En *P. Ricancars, Inc. v. Plaza Las Américas*, 121 D.P.R. 238 (1988), un caso en que denegamos una solicitud de revisión de una sentencia declarando sin lugar una demanda sobre daños y perjuicios, por insuficiencia de prueba de negligencia y

■ En *Elba A.B.M. v. U.P.R.*, supra, determinamos que la Universidad de Puerto Rico incumplió su deber de proveer adecuada protección y seguridad a sus estudiantes al ser atacada y violada la demandante en los terrenos de la Universidad de Puerto Rico, campus de Río Piedras. Aplicamos el principio de que para que exista responsabilidad civil bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, es necesario que ocurra una acción u omisión, un daño y la correspondiente relación causal entre el daño y la conducta culposa o negligente. En el caso de la ocurrencia de omisiones, habrá causa de acción cuando exista un deber de actuar. Habrá responsabilidad si se quebranta este deber. Véase, además, *Arroyo López v. E.L.A.*, 126 D.P.R. 682 (1990).

Los factores de la previsibilidad y el riesgo envuelto en el caso específico son elementos esenciales de la responsabilidad por culpa o negligencia. *Elba A.B.M. v. U.P.R.*, supra. "El deber de cuidado incluye tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya

---

causalidad por un robo de un auto en el estacionamiento de Plaza Las Américas, el Juez Asociado Señor Rebollo López expresó, en una opinión concurrente, lo siguiente:

"A diario leemos noticias e informes a los efectos de que en el estacionamiento de Plaza Las Américas, y otros estacionamientos similares, se cometen un considerable número de delitos contra la propiedad y la persona.

"De ello ser así —no tenemos razón alguna para dudar de las estadísticas de la Policía de Puerto Rico a esos efectos— surge la interrogante de si esas medidas de seguridad que tienen en vigor dichos centros comerciales son o no suficientes y razonables para proteger la vida y propiedad de sus clientes. Después de todo debe recordarse que los mismos gastan en dichos centros grandes cantidades de dinero, lo que a su vez le produce a los operadores, y dueños de establecimientos de dichos centros comerciales, cuantiosas ganancias.

"No creemos resulte irrazonable, en su consecuencia, que se le exija a los dueños de los referidos centros comerciales que tomen las medidas necesarias para garantizar al máximo la vida y propiedad de los clientes que patrocinan los mismos. En otras palabras, no basta con demostrar que se tienen medidas de seguridad; las mismas deben ser suficientes y razonables a la luz de la incidencia criminal existente en dichos centros. Debe mantenerse presente que la 'culpa o negligencia es la falta del *debido cuidado, que a la vez consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto*, que una persona prudente habría de prever en las mismas circunstancias'. *Ramos v. Carlo*, 85 D.P.R. 353, 358 (1962)." (Énfasis en el original suprimido y escolio omitido.) *P. Ricancars, Inc. v. Plaza Las Américas*, supra, pág. 243.

probabilidad es razonablemente previsible. 'Pero la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrostradas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase.' " Íd., pág. 309.

■ Al aplicar el principio de la causalidad adecuada, expresamos "que la difícil determinación de cuándo existe un nexo causal entre el daño producido por un acto delictivo de un tercero y la omisión de cumplir con la obligación de tomar precauciones, medidas de seguridad y protección, no puede 'resolverse nunca de una manera plenamente satisfactoria mediante reglas abstractas, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias'. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1967, T. 3, pág. 195". *Elba A.B.M. v. U.P.R.*, supra, págs. 310–311.

En *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990), se alegó negligencia por parte del Hospital de Siquiatría al éste permitir que se escapara un paciente y cometiera dos (2) asesinatos. Allí revocamos una sentencia sumaria a favor de la parte demandada al encontrar, entre otras cosas, que la cuestión del nexo causal no estaba clara. Citando a *Elba A.B.M. v. U.P.R.*, supra, expresamos que "[l]a dificultad estriba en poder precisar 'cuándo se da la relación de causalidad y cuáles son sus límites; cuándo deba estimarse que el hecho productor del daño es causa jurídica que según su naturaleza general aparezca como adecuada para engendrar ese daño'... especialmente cuando se trata de un daño que es el resultado de un acto delictivo de un tercero". *Elba A.B.M. v. U.P.R.*, supra, pág. 310.

# IV

*Jurisprudencia en Estados Unidos sobre la responsabilidad por los actos delictivos de un tercero en un centro comercial*

La situación que nos ocupa no ha sido objeto de discusión en España, probablemente debido a que el concepto del centro comercial es de raíz norteamericana. Es por esta razón que acudimos, a manera persuasiva, a la jurisprudencia norteamericana, pero sin perder de vista "que el derecho de daños en Puerto Rico se rige, tanto en su forma como en su contenido, por el sistema del derecho civil ...". *Valle v. Amer. Inter. Ins. Co.*, 108 D.P.R. 692, 695 (1979).

Sin entrar en las sutilezas que distinguen la solución de los casos que plantean la cuestión que nos ocupa, podemos generalizar ciertos puntos básicos que tienen en común.

Como anteriormente mencionamos, el tratadista Prosser admite que aunque como regla general no existe un deber de proteger a otros de actos criminales de terceros, existen situaciones en que responde un demandado por los actos delictivos de un tercero contra el demandante. Observa que el asunto sigue siendo de negligencia y riesgo previsible. W.P. Keeton, *Prosser and Keeton on Torts*, 5ta ed., Minnesota, Ed. West Publishing Co., 1984, págs. 201–203. Incluso un gran número de casos han aplicado la Sec. 344 del *Restatement of the Law (Second) of Torts*, la cual expresa:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid

the harm, or otherwise to protect them against it.

... Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of the third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection. 2 *Restatement of the Law (Second) of Torts* Sec. 344 (1965).

En cuanto a la situación particular de los centros comerciales regionales se puede deducir que si éstos tienen conocimiento de que han ocurrido numerosos actos delictivos en el área bajo su dominio y control, o de que existen circunstancias que hagan que una persona prudente y razonable pueda anticipar la ocurrencia de tales actos, puede crearse el deber de proveer seguridad y precauciones razonables adecuadas para prevenir estos actos. La omisión de cumplir con este deber podría crear responsabilidad por los daños que ocurran como consecuencia de dicha omisión. En otras palabras, la responsabilidad que genera esta omisión dependerá de la existencia de un deber de proveer adecuada seguridad. A su vez, ese deber depende de si por la naturaleza esencial de la actividad llevada a cabo en el centro comercial, éste viene obligado a ofrecer un grado de protección y seguridad independiente del que ofrecen las agencias de seguridad pública y de si el acto delictivo puede ser razonablemente anticipado. Este deber de ofrecer protección y seguridad adecuada surgirá cuando el demandado tenga, o deba tener, conocimiento de la ocurrencia de actos delictivos en el área del centro comercial o de

circunstancias que hagan anticipable la ocurrencia de tales actos.

La clave para poder imponer responsabilidad por la omisión de proveer protección y seguridad adecuada, en cuanto a centros comerciales del tipo regional, es definir previsibilidad: ¿qué actos deben ser previsibles antes de que el deber de prever actos delictivos se estime que ha sido quebrantado? Se puede prever la ocurrencia de un acto delictivo virtualmente en cualquier lugar y momento. Si la previsibilidad per se creara un deber de ofrecer protección policíaca para otros, cada tienda o almacén tendría que ser vigilado por el dueño. La cuestión no es simplemente si un acto delictivo es previsible, mas si existe un deber de tomar medidas de protección. En última instancia, si existe o no este deber es una cuestión de equidad y justicia que requiere un balance de la relación entre las partes, la naturaleza de riesgo y el interés público en la solución propuesta. *Goldberg v. Housing Authority*, 186 A.2d 291 (1962). Requeriría extraordinaria visión prever que una persona en particular va a ser víctima de un acto delictivo en un momento y lugar determinado. Dentro de los extremos encontramos varios grados de previsibilidad, de entre los cuales los tribunales deberán seleccionar cuando tengan que delimitar la norma de cuidado razonable. La ocurrencia de actos delictivos previos no produce una responsabilidad automática por delitos subsiguientes; más bien, el deber de prevenir actos delictivos obliga a tomar medidas razonables de precaución para evitar que ocurran delitos similares. Si aún con la fuerza policíaca del Estado la ola criminal nos arropa, no podemos ser irrazonables y pretender que manos privadas asuman la protección de los ciudadanos. Hay que establecer un balance sin llegar a lo absurdo.

En muchos casos se ha presentado evidencia de actividad criminal previa en el centro comercial o sus alrededores para demostrar que existía aviso previo de la probable

ocurrencia de los actos criminales en cuestión. Los informes de la policía, al igual que los récord del personal de seguridad, han sido un buen recurso para demostrar la ocurrencia de estos actos delictivos.[11]

En *Morgan v. Bucks Assoc.*, 428 F. Supp. 546 (D. Pa. 1977), se responsabilizó al dueño de un centro comercial por los daños ocasionados al demandante por un tercero, como consecuencia de un asalto en el estacionamiento de dicho centro comercial. Al demostrar la ocurrencia de un gran número de hurtos de autos en el estacionamiento, el demandante evidenció la probabilidad y previsibilidad del asalto en cuestión. El tribunal consideró que estos actos criminales eran suficientes para determinar que el demandado conocía o debía conocer la probabilidad de futuros actos. Véanse, también: *O'Brien v. Colonial Village, Inc.*, 255 N.E.2d 205 (1970); *Cornpropst v. Sloan*, 528 S.W.2d 188 (1975); *Foster v. Winston-Salem Joint Venture*, 281 S.E.2d 36 (1981); *Gillot v. Washington Metro. Area Transit Authority*, 507 F. Supp. 454 (D.C. 1981); *Miles v. Flor-Line Associates*, 442 So. 2d 584 (1983); *Taylor v. Hocker*, 428 N.E.2d 662 (1981); *Bradenton Mall Associates v. Hill*, 508 So. 2d 538 (1987); *Galloway v. Bankers Trust Co.*, 420 N.W.2d 437 (1988); *Willie v. American Cas. Co.*, 547 So. 2d 1075 (1989), entre otros. El hilo común entre la gran mayoría de estos casos es el factor "previsibilidad". Para una discusión más detallada sobre el tema, véanse: R.L. Cherry, Jr., *Liability of Business Property Owners for Injury to Customers in Parking Lots by Criminal Attacks from Third Parties,* 13 Real Est. L.J. 141 (1984); T.J. Duff, *The Tort Liability of Mall Owners for the Criminal Conduct of Third-Parties,* 36 Drake L. Rev. 755 (1986–1987); M.J. Ye-

---

[11] Véanse: *Atamian v. Supermarkets General Corp.*, 369 A.2d 38 (N.J. 1976); *Williams v. Carolina Power & Light Co.*, 250 S.E.2d 255 (1979); *Reichenbach v. Days Inn of America, Inc.*, 401 So. 2d 1366 (1981); *Foster v. Winston-Salem Joint Venture*, 281 S.E.2d 36 (1981); *Brown v. J.C. Penney Co.*, 688 P.2d 811 (Or. 1984); *Martinko v. H-N-W Associates*, 393 N.W.2d 320 (1986).

lnosky, *Business Inviter's Duty to Protect Invitees from Criminal Acts*, 134 U. Pa. L. Rev. 883 (1986); L.D. Kulwicki, *A Landowner's Duty to Guard Against Criminal Attack: Foreseeability and the Prior Similar Incidents Rule*, 48 Ohio St. L.J. 247 (1987); F.E. Van Orsdel, *Evidence of Prior General Criminal Activity at Mall Raised a Genuine Issue of Material Fact as to Whether Sexual Attack on Patron Was Reasonably Foreseeable*, 39 Drake L. Rev. 225 (1989–1990).

De las doctrinas aplicables a situaciones similares a las del caso de autos, tanto en Puerto Rico como en la mayor parte de los estados, se puede colegir que para poder responsabilizar a un centro comercial regional por los actos delictivos de un tercero cometidos contra un cliente en sus predios, debe haber un quebrantamiento del deber de proveer adecuada y razonable vigilancia. Este deber se basa en la naturaleza de la actividad llevada a cabo en un centro comercial regional y en la previsibilidad de actos delictivos que depende, a su vez, del conocimiento de actos delictivos previos en el centro comercial o de circunstancias que hagan que una persona prudente y razonable pueda anticipar la ocurrencia de tales actos. El quebrantamiento de este deber dependerá de si las medidas tomadas fueron o no adecuadas. La adecuacidad de las medidas adoptadas a su vez dependerá, entre otras cosas, de: (1) la naturaleza del centro comercial y las actividades que allí se llevan a cabo; (2) la naturaleza de la actividad criminal que se esté registrando en el área del centro, y (3) si las medidas de seguridad que se adopten son razonables y van dirigidas a minimizar la posibilidad de que los patrocinadores del centro sufran daños causados por la actividad criminal intencional de terceros.

Ahora bien, el hecho de que ocurra un acto delictivo por parte de un tercero que cause daños no significa que automáticamente el centro comercial sea responsable. Tampoco el hecho de que ocurra un daño de esta natura-

leza quiere decir que las medidas de seguridad adoptadas por el centro son inadecuadas. El centro comercial no puede garantizar una seguridad absoluta. La responsabilidad no es automática ni absoluta; dependerá de los hechos y de la totalidad de las circunstancias de cada caso en particular.

## V

*La sentencia sumaria y la determinación de negligencia*

■ La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece que una sentencia sumaria procede si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, demostrasen que no hay controversia real sustancial en cuanto a hecho material alguno y que como cuestión de derecho procede dictar sentencia sumaria a favor de cualesquiera de las partes. "La sentencia sumaria es un remedio extraordinario que sólo debe ser concedido cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia presentada con la moción." *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

■ Sólo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes y determine que no es necesaria una vista evidenciaria. *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra, pág. 721. "[L]a parte que solicite que se dicte sentencia sumaria en un litigio está en la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo aplicable determinaría una sentencia a su favor como cues-

tión de ley." *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83, 86 (1987). De los documentos que acompañan la moción, si ésta es presentada por el demandado, deben surgir hechos específicos que establezcan la ausencia de responsabilidad del promovente. "Para que un demandado pueda promover exitosamente una sentencia sumaria tiene que establecer una teoría de hechos que definitivamente le dé la razón." P.E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 6 (1987). Los casos en que se plantea si hay o no negligencia de ordinario no deben resolverse por la vía sumaria, a menos que el récord demuestre con meridiana claridad que no hay controversia genuina sobre el hecho de la negligencia. *Lasanta Piñero v. Retto, Inc.*, 100 D.P.R. 694, 698 (1972); *Vda. de Viera v. Tribunal Superior*, 93 D.P.R. 503 (1966).

## VI

*Aplicación del Derecho a los hechos*

Con este trasfondo, pasemos a analizar la corrección de la sentencia sumaria dictada por el foro de instancia.

Los hechos que el tribunal consideró que no estaban en controversia surgen de una deposición que se le tomó a la menor codemandante en un caso, sobre los mismos hechos, presentado ante el Tribunal Federal de Distrito para el Distrito de Puerto Rico. Estos hechos pueden resumirse de la siguiente manera: el 2 de diciembre de 1983, Z.D.V., de 16 años de edad, fue con una amiga a Plaza Carolina. Luego de hacer sus compras, como a las 8:30 de la noche, se dirigieron frente a J.C. Penney, donde dentro del estacionamiento se cogen las guaguas y carros públicos. Allí, en la acera frente a la tienda, se acercó un mozalbete, quien abrazó a Z.D.V. poniéndole un puñal en el cuello. Así, las obligó a caminar desde esa acera, a cruzar dos avenidas fuera del centro comercial y a dirigirse a un pastizal. Esta

caminata duró como media hora. Al llegar al pastizal, el asaltante cometió actos impúdicos con ambas niñas, dándose a la fuga posteriormente.

Con su moción de sentencia sumaria la parte demandada simplemente acompañó dos (2) sentencias de casos previamente resueltos por el Tribunal Superior entre otras partes.[12] La parte demandante, a su vez, presentó oposición acompañándola con estadísticas generales de la Policía del Área de Carolina y recortes de periódicos sobre crímenes en el área. Con una moción de reconsideración a la sentencia sumaria, la parte demandante presentó el contrato entre la codemandada Plaza Carolina Security Corporation y Wackenhut Corporation. Hemos examinado con detenimiento toda la prueba documental que tuvo ante sí el tribunal y concluimos que éste no contó con la prueba necesaria para poder determinar que el derecho le favorecía a la parte demandada. Los documentos que tuvo ante sí el foro de instancia no eran suficientes para resolver que no existía responsabilidad alguna de parte de la demandada. En fin, el demandado no presentó prueba documental suficiente para avalar su teoría de ausencia de responsabilidad. *Cuadrado Lugo v. Santiago Rodríguez*, supra, págs. 283–284.[13]

---

[12] Cabe señalar que ninguno de estos casos se refería a la responsabilidad de un centro comercial regional por los actos delictivos cometidos por un tercero.

[13] Un elemento esencial de este tipo de acción es la existencia o ausencia de conocimiento del demandado de la ocurrencia de los actos delictivos previos en el área del centro comercial, o el conocimiento de la existencia de circunstancias que hicieran previsibles estos actos. La parte demandante alegó en su demanda este conocimiento. En la contestación de la demanda, los demandados lo negaron. En un interrogatorio los demandantes solicitaron de la parte demandada que indicaran todos los actos de agresión y actos delictivos que habían ocurrido en Plaza Carolina desde 1979 hasta ese momento, o sea hasta junio de 1984. La parte demandada contestó que esta información era irrelevante, que el término era excesivamente amplio y que la pregunta imponía una tarea onerosa y costosa. Ante la objeción por la demandante a esta contestación, el tribunal determinó que la pregunta era material y relevante y ordenó a las partes reunirse para llegar a un acuerdo razonable. De los documentos que obran en autos no se desprende que las partes se reunieran para dilucidar lo ordenado por el tribunal. Tampoco surge que esta información le fuese

Cabe señalar que, independientemente del hecho de que Plaza Carolina ofrecía algún tipo de seguridad a sus clientes, esto per se no la exime de responsabilidad. El tribunal tenía que evaluar si esta seguridad era adecuada y razonable.

Por todo lo antes expuesto, *se dictará sentencia revocando la emitida por el Tribunal Superior, Sala de Carolina, y devolviendo el caso al foro de instancia para que continúen los procedimientos de forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Negrón García emitió una opinión concurrente y disidente. El Juez Asociado Señor Hernández Denton no intervino.

— O —

Opinión concurrente y disidente del Juez Asociado Señor Negrón García.

La opinión mayoritaria expone, con carácter limitante, que un *centro comercial regional* (*shopping center*) es susceptible de ser responsabilizado por los daños causados a sus patrocinadores y visitantes debido a actos delictivos de un tercero y que, por ende, no procedía la sentencia sumaria a favor de los demandados Centro Comercial Plaza Carolina *et als.*

Disentimos, no obstante, de la norma de responsabilidad que restringe el deber de proveer medidas de seguridad y protección adicionales a las del Estado, únicamente a los *centros comerciales regionales*, a base del criterio del tamaño. Nos explicamos.

_____
suministrada a la parte demandante ni que esta parte hiciera otras gestiones para obtenerla.

## I

En *Estremera v. Inmobiliaria Rac., Inc.*, 109 D.P.R. 852, 856 (1980), si bien reiteramos la regla general de que los comerciantes no son responsables de "la irrupción del crimen ... en sus negocios", reconocimos "otras situaciones en las que recae sobre el demandado una responsabilidad especial por la protección del demandante, *o en las que una tentación u oportunidad especial de conducta criminal propiciadas por el demandado, le imponen la obligación de tomar precauciones contra ellas.* La responsabilidad por protección puede surgir de un contrato mediante el cual el demandado se ha obligado a proveerla; *o puede fundarse en alguna relación entre las partes*, como porteador y pasajero, hotelero y huésped, *invitante y visitante en negocios*, escuela y discípulo, patrono y empleado, arrendador y arrendatario .... En todas estas situaciones, sin embargo, habrá responsabilidad sólo si el demandado es negligente en no tomar precauciones contra el posible criminal; *esto es, si el riesgo previsible es de dimensión irrazonable comparado con el peso de tomarlas*". (Énfasis suplido.) Íd., pág. 858 esc. 6.

Sabido es que la persona o empresa que mantiene un establecimiento abierto al público para llevar a cabo operaciones comerciales para su propio beneficio tiene el deber, dentro de lo razonable, de mantenerlo en condiciones de seguridad para quienes lo patrocinan. *Soc. Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94, 104 (1986). A su amparo hemos impuesto responsabilidad en situaciones que implican condiciones peligrosas existentes *dentro* de los establecimientos, conocidas por los propietarios o cuyo conocimiento les era imputable. *Cotto v. C. M. Ins. Co.*, 116 D.P.R. 644, 650 (1985), y casos allí citados.

## II

Si en Puerto Rico hemos de configurar una obligación de proveer medidas de seguridad y protección razonables —independientes de las del Estado— en las áreas de estacionamiento,[1] ha de ser como una extensión lógica y natural del deber aludido *de todo operador de un establecimiento comercial* el mantenerlo en condiciones de seguridad, y no a base del criterio de "naturaleza esencial", el cual, al decir mayoritario, responde sólo al tamaño de los centros comerciales regionales *"por la variedad de actividades que allí se llevan a cabo y el cúmulo de servicios que se ofrecen, o sea, por su naturaleza esencial ..."*. (Énfasis suplido.) Opinión mayoritaria, pág. 791.

Finalmente, reiteramos que los operadores de establecimientos o centros comerciales no son garantes absolutos de la seguridad de sus clientes. *Goose v. Hilton Hotels*, 79 D.P.R. 523 (1956). Las medidas de cuidado que han de ser desplegadas deben ser sólo razonables, lo cual implica que la obligación ha de concebirse en términos de *exigencias mínimas* a tono con las realidades y experiencias comerciales específicas. L.D. Kulwicki, *A Landowner's Duty to Guard Against Criminal Attack: Foreeability and the Prior Similar Incidents Rule*, 48 Ohio St. L.J. 246, 270 (1987).

---

[1] El estacionamiento, sus aceras y áreas aledañas presentan un riesgo especial por las oportunidades que ofrecen para el crimen, ya que los clientes usualmente llevan consigo dinero o mercancía recién adquirida. M.J. Yelnoski, *Business Inviters' Duty to Protect Invitees from Criminal Acts*, 134 U Pa. L. Rev. 883, 886 (1986).