# 2000 DTA 125

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL II**

TRANSPORT AUDITING, INC.
Demandante-Apelante

v.

THERMO KING DE PUERTO RICO, INC.; X,Y,Z; ASEGURADORA A Y B
Demandadas-Apeladas

Núm. KLAN-99-01417

San Juan, Puerto Rico, a 31 de marzo de 2000

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano,
el Juez Aponte Jiménez y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La apelante, Transport Auditing Inc., en adelante Transport, nos solicita que revoquemos una sentencia sumaria dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, de 25 de octubre de 1999, que desestimó con perjuicio una demanda en cobro de dinero por servicios presentada por ésta en contra de la parte apelada, Thermo King de Puerto Rico, Inc., en adelante Thermo King. Alega la apelante que incidió el tribunal *a quo* al entender que no existía controversia sustancial de hechos y que la apelante no tenía la documentación necesaria para sustentar la reclamación ni estaba autorizada para presentarla.

Examinados los planteamientos de las partes y el derecho aplicable, procede revocar la sentencia apelada.

I

El 1 de septiembre de 1989, Thermo King y Transport suscribieron un contrato para realizar unos análisis de cuentas y pagos de Thermo King a diferentes acarreadores para determinar si Thermo King había pagado dos veces por los mismos cargos de flete. En este caso, Thermo King debía hacer las correspondientes reclamaciones a los acarreadores. Por estos servicios, Transport recibiría cincuenta por ciento (50%) de todas las reclamaciones transigidas, basado en la cantidad recobrada en cada reclamación, fuera mediante desembolso en efectivo o crédito a la cuenta de Thermo King.

Las partes establecieron, además, que Transport no era, por ningún medio, representante legal de Thermo King. Sin embargo, Transport mantendría un registro de las reclamaciones instadas, así como la fecha en que se presentó, el número de la misma, el día en que se pagó y el número de cheque, si ésta fue pagada.

A principios de 1992, Transport le informó a Thermo King que tenía derecho a recobrar la cantidad de $553,043.76, que había pagado por cargos de flete duplicados. La investigación reflejó que Thermo King realizó pagos dobles ascendientes a la cantidad de $106,522.00 a Puerto Rico Marine Managment, Inc., en adelante Puerto Rico Marine, y por $330,529.00 a Sea Land Services, Inc., en adelante Sea Land. Transport

comenzó un proceso extrajudicial para reclamar a Puerto Rico Marine y Sea Land el exceso en los supuestos pagos duplicados. El 28 de enero de 1993, Thermo King le solicitó a Transport que remitiera copia de las reclamaciones que había presentado contra los acarreadores.

Así las cosas, el 13 de septiembre de 1993, Transport le remitió una carta a Thermo King en la que le indicaba que de no asumir una posición en relación con las cantidades que Transport alegaba que se le adeudaban, Transport tomaría acción legal contra ésta. Le informó a Transport que había recobrado cerca de $165,906.79 de la cantidad adeudada. En cuanto a las otras cantidades, indicó que por la antigüedad no se había podido determinar las otras cantidades. Expresó, además que, de entender que las reclamaciones todavía eran válidas, Transport podía continuar hasta obtener el pago de las mismas.

A finales de 1993, Transport presentó sendas demandas en cobro de dinero contra Puerto Rico Marine y Sea Land. Esta última demanda fue trasladada al Tribunal de Distrito Federal para el Distrito de Puerto Rico, para luego ser devuelta en septiembre de 1995 al tribunal. No hubo trámite posterior alguno en este pleito, pues Transport abandonó el mismo luego que la matriz de la apelada, Thermo King, indicara que no deseaba que se continuara con la tramitación de las reclamaciones judiciales.

El 15 de abril de 1994, Transport presentó en el pleito contra Puerto Rico Marine, una solicitud de descubrimiento de prueba para que se le ordenara a C.T.I. Logistic, Inc., en adelante C.T.I., subsidiaria del Chase Manhattan Bank, en adelante Chase, producir una serie de documentos consistentes en cheques cancelados que necesitaba para probar su reclamación. El tribunal emitió la orden.

Así las cosas, el 10 de abril de 1996, Transport presentó una segunda demanda enmendada que incluia a C.T. I. y el Chase como demandadas con el propósito de que produjeran la evidencia de los cheques que emitieron. No obstante, menos de un año de presentada la demanda enmendada, Transport desistió de su reclamación contra C.T.I. y el Chase.

El 26 de junio de 1997, Transport le solicitó a Thermo King que autorizara al Chase a suplirle la información que necesitaba en el pleito. Thermo King le informó que no iba a autorizar al Chase a proveer la información solicitada y le señaló que Transport no estaba autorizada a instar reclamaciones en su representación. El 15 de octubre de 1997, Transport le requirió a Thermo King que le expresara su posición en relación con las reclamaciones que ésta había presentado. A este requerimiento, Thermo King, mediante carta suscrita por el señor James R. Chamberlain, vicepresidente de Thermo King Corporation, matriz de Thermo King de Puerto Rico, contestó que no deseaba participar en los litigios en contra de sus clientes ni cooperar directamente en éstos, que nunca autorizó a Transport a llevar a cabo pleitos en representación de Thermo King, ni lo autorizaba el contrato suscrito por ambas y, finalmente, que Transport podía llevar las reclamaciones en su propia representación y obtener los documentos por otros medios.

A solicitud de Transport, el 23 de febrero de 1998, el tribunal de instancia emitió una sentencia de archivo por desistimiento voluntario con perjuicio en el caso contra Puerto Rico Marine. El 26 de febrero de 1998, Transport presentó una demanda en cobro de dinero por servicios contra Thermo King. Reclamó la cantidad de $299,615.70, correspondiente al cincuenta porciento (50%) de lo reclamado en las demandas contra Puerto Rico Marine y Sea Land. Alegó que como consecuencia de que fue desautorizada a continuar dichos litigios por Thermo King, no pudo cobrar el dinero que le correspondía por los servicios prestados.

El 15 de mayo de 1998, Thermo King presentó una moción de sentencia sumaria en la que señaló que no otorgó contrato de mandato con Transport que le autorizara a ésta a actuar como su representante legal para ningún propósito ni foro alguno. Indicó que la parte desistió de las reclamaciones voluntariamente y no bajo instrucciones de Thermo King y, además, que el hecho que Transport haya abandonado el caso contra Sea Land y que el caso contra Puerto Rico Marine haya sido desistido con perjuicio, constituye adjudicación en los méritos a los efectos de que los allí demandados no adeudaban dinero alguno por concepto de pagos duplicados, por lo que impedía a Transport a exigir el cincuenta por ciento (50%) de una suma inexistente.

Luego de varios trámites procesales, el 13 de mayo de 1999, Transport presentó su oposición a la moción de sentencia sumaria. En su moción alegó que existían controversias sustanciales de hechos materiales que en ningún momento fueron refutadas por Thermo King en su moción de sentencia sumaria. Adujo el hecho de que en ningún momento se atacaron alegaciones sumamente importantes, tales como el contrato otorgado, los servicios prestados por ésta, el resultado de la auditoría y la falta de pago por dichos servicios.

El 25 de octubre de 1999, el tribunal dictó sentencia en la que desestimó la demanda presentada por Transport contra Thermo King; determinó que no existían controversias sustanciales y, por tanto, no había razón para posponer dictar sentencia. A esta sentencia, Transport presentó una solicitud de reconsideración que al no ser atendida por el tribunal, se entiende rechazada de plano.

Inconforme con las determinaciones del tribunal, comparece Transport y nos solicita revoquemos la sentencia sumaria dictada.

## II

Procede, en primer lugar, que expongamos las normas que rigen el mecanismo de sentencia sumaria. Es bien conocido el principio establecido en la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, que establece que una sentencia sumaria procede si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, demuestran que no hay controversia real sustancial en cuanto a hecho material alguno y que como cuestión de derecho procede dictar sentencia sumaria a favor de cualesquiera de las partes. Sólo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes y determine que no es necesaria una vista evidenciaria. *Audiovisual Language v. Sistema Estacionamiento Natal Hermanos,* 144 D.P.R. ___ (1997); **97 J.T.S. 147,** pág. 393.

La sentencia sumaria tiene como objetivo principal la terminación de una controversia sin la necesidad de que se celebre juicio. Por consiguiente, la moción solicitando que ésta se dicte, obliga a que se presente prueba que se utilizaría durante el juicio en respaldo de las alegaciones, la que de no ser adecuadamente refutada, permite que se disponga el pleito a favor de alguna de las partes. *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272, 278 (1990). Sólo debe concederse cuando se haya establecido claramente el derecho del que la solicita y se haya demostrado que la otra parte no tiene probabilidad de prevalecer bajo ninguna situación que surja de las alegaciones no refutadas por los documentos presentados con la moción. *Casto Soto v. Hotel Caribe Hilton,* 137 D.P.R. (1994), **94 J.T.S. 128,** pág. 311; *J.A.D.M. v. Centro Comercial Plaza Carolina,* 132 D.P.R. 785 (1993).

Al resolver una moción de sentencia sumaria, todas las inferencias que puedan surgir de los hechos expuestos en los documentos en autos deben hacerse desde el punto de vista más favorable al que se opone a la moción y toda duda sobre si hay hechos relevantes en controversia debe resolverse contra la parte que solicita la sentencia sumaria. *Jorge et al v. Universidad Interamericana,* 109 D.P.R. 505 (1976).

La sentencia sumaria procede en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hace falta una vista evidenciaria. *Medina Morales v. Merck, Sharp & Dohme Química de Puerto Rico, Inc.,* 135 D.P.R. ___ (1994), **94 J.T.S. 52,** a la pág. 11,786; *J.A.D.M. v. Centro Com. Plaza Carolina, supra.* De ordinario, si existen dudas sobre la procedencia de la sentencia sumaria, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaria. Véanse, *Rivera Rodríguez v. Departamento de Hacienda,* 149 D.P.R. ___ (1999), **99 JTS 144**; *Bonilla Medina v. Partido Nuevo Progresista,* 140 D.P.R. (1996), **96 J.T.S. 33,** a la pág. 790; *Rivera et al. v. Superior Pkg. Inc. et al,* 132 D.P.R. 115, 133 (1992).

La determinación de disponer de un pleito, mediante este mecanismo, es una que está confiada a la discreción del foro de primera instancia. *PFZ Properties v. General Accident Insurance Corp.,* 136 D.P.R. ___ (1994), **94 J. T.S. 116,** a la pág. 125.

La parte que solicita la sentencia sumaria tiene que demostrar que no hay controversia real sustancial en

cuanto a ningún hecho material y que procede se dicte sentencia a su favor como cuestión de ley. La parte opositora se ve entonces en posición de poner en controversia los hechos presentados por el promovente. *Soto Vázquez v. Rivera Alvarado,* 144 D.P.R. (1997), **97 J.T.S. 145,** a las págs. 368-69; *Pilot Life Insurance Company v. Crespo Martínez,* **94 J.T.S. 104,** a la pág. 21.

Una vez la moción de sentencia sumaria ha sido presentada y se sostiene en la forma provista por la Regla 36 de las de Procedimiento Civil, la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en su demanda, sino que viene obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo los hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo, debe dictarse sentencia sumaria en su contra, si procediere en derecho. *Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos, supra; PFZ Properties v. General Accident Insurance Corp., supra; Pilot Life Insurance Company v. Crespo Martínez, supra.*

Al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción de oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no debe dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material; ó (4) como cuestión de derecho no procede. *PFZ Properties v. General Accident Insurance Corp., supra.*

Por tanto, aunque el ejercicio de la discreción judicial al evaluar los hechos, los documentos y el derecho para decidir si se emite o no la sentencia sumaria está reconocido en el lenguaje de la Regla 36.3, *supra,* y en la jurisprudencia, esa evaluación está supeditada a lo que claramente surja del expediente en cuanto a si existen o no controversias de hechos materiales y al derecho aplicable; más aún, si se estima procedente el mecanismo sumario, hay circunstancias que militan contra ese dictamen.

Examinemos la sentencia sumaria en este caso, a la luz de las normas previamente enunciadas.

## III

La sentencia sumaria apelada desestimó todas las causas de acción incluidas en la demanda por diferentes razones. El tribunal apelado concluyó que Transport no había presentado documento alguno que acreditara su facultad para iniciar reclamaciones judiciales como mandataria de Thermo King. Este determinó que no se podía dar al término *"claim"* una interpretación diferente de la que surgía del contexto en que fue utilizado por las partes y que no surgía de las comunicaciones que Thermo King le envió a Transport ninguna autorización a iniciar acciones judiciales.

En primer lugar, debemos señalar que Transport presentó una declaración jurada ante el tribunal *a quo* sustentando que poseía la documentación necesaria para efectuar las reclamaciones. En dicha declaración suscrita por el presidente de Transport, José Luis Zorrilla Pérez, se hace mención a una deuda ascendente a $19,103.04 por concepto de una reclamación efectuada por Transport a Puerto Rico Marine y que fue pagada a Thermo King en el 1992. Dichas alegaciones no fueron refutadas por Thermo King en su moción de sentencia sumaria.

Thermo King venía obligada a demostrar que no había controversia real sustancial en cuanto a ningún hecho material y que procedía se dictara sentencia a su favor como cuestión de ley. No rebatió el hecho que Transport tuviera en su poder los reportes de pago en los cuales se basaron las reclamaciones. Tampoco negó la existencia de una deuda por la cantidad de $19,103.04 por concepto de la reclamación de Transport a Puerto Rico Marine.

Por otro lado, existe controversia sustancial en cuanto a si estaba Transport autorizada a presentar las reclamaciones que resultaran de sus auditorias. En su declaración jurada, el señor Zorrilla Pérez afirmó que el

señor Orlando Campos, representante autorizado de Thermo King de Puerto Rico, lo autorizó a presentar las reclamaciones y continuar con las mismas. De hecho, de la carta emitida por el señor James R. Chamberlain, vicepresidente de Thermo King Corp., refleja que Thermo King nunca autorizó a Transport a presentar ninguna demanda. Sin embargo, Transport alega que el señor Chamberlain no tenía conocimiento de la autorización emitida por el señor Campos. Estas corporaciones son distintas, aunque Thermo King de Puerto Rico es una subsidiaria de Thermo King Corporation.

Es decir, existe controversia sustancial que hacía la sentencia sumaria el mecanismo procesal menos recomendable. El tribunal no debió dictar sentencia sumaria cuando, existían hechos materiales no controvertidos y alegaciones afirmativas en la demanda que no habían sido refutadas. En el presente caso surge de los propios documentos que se acompañaron con la moción en oposición a la sentencia sumaria que existía una controversia real sobre hechos materiales.

Finalmente, nos parece equivocada la conclusión del tribunal en cuanto a que el haber abandonado los casos contra Sea Land y desistido con perjuicio en el caso contra Puerto Rico Marine, constituye una aceptación por parte de Transport a los efectos de que las allí demandadas no adeudaban cantidad de dinero alguna a Thermo King. Es importante señalar que nuestro Código Civil dispone que para que exista la presunción de cosa juzgada deben concurrir la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. Art. 1204, Código Civil, 31 L.P.R.A. sec. 3343.

De este artículo se desprende que uno de los requisitos fundamentales para la aplicación de la doctrina de cosa juzgada es que concurra la más perfecta identidad entre las personas de los litigantes. En el caso de autos, no se cumple con este requisito. Las demandas entabladas por Transport no incluían a Thermo King. Es en este pleito en que se reclama el cobro de servicios prestados y no pagados. No es, pues, de aplicación la doctrina de cosa juzgada a los hechos del presente caso.

Indudablemente, no se demostró por Thermo King la inexistencia de las cantidades pagadas doblemente, según surgía de la auditoría realizada por Transport. No se dispuso en el contrato suscrito entre las partes de forma alguna en que cobraría Transport por sus servicios en el caso en que Thermo King decidiera no presentar ninguna reclamación. De los hechos sólo surge que Thermo King no deseaba presentar estas reclamaciones, no por entender que las mismas eran inexistentes, sino por el efecto comercial adverso que dichas reclamaciones podrían tener contra esta parte. Bien pudo Thermo King, de entender que las reclamaciones tendrían un efecto adverso, prescindir de los servicios de Transport o contratar los servicios de ésta.

En definitiva, entendemos que no ha quedado demostrado que Transport no tenga derecho bajo ninguna circunstancia. La moción de sentencia sumaria presentada por Thermo King no refutó las alegaciones de Transport. Ciertamente, existen controversias sustanciales que ameritan ver el caso en sus méritos.

## IV

Por los fundamentos anteriormente expuestos, revocamos la sentencia apelada y devolvemos el caso al Tribunal de Primera Instancia para trámites posteriores consistentes con lo aquí expuesto.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General