Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| EFRAÍN PADILLA ROSA Y OTROS<br><br>Apelantes<br><br>V.<br><br>CARMEN L. VÉLEZ MORALES Y OTROS<br><br>Apelados | KLAN202401044 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2018CV00558<br><br>Sobre: Disolución de Compañía de Responsabilidad Limitada |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 8 de mayo de 2025.

El 22 de noviembre de 2024, compareció ante este Tribunal de Apelaciones, el señor Efraín Padilla Rosa, la señora María Guzmán Álvarez y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, parte apelante), por medio de *Apelación*. Mediante esta, nos solicita que revisemos la *Sentencia* emitida el 22 de octubre de 2024 y notificada el 23 de octubre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Arecibo. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la *Demanda Enmendada* presentada por la parte apelante, así como la *Contestación a Demanda Enmendada y Reconvención* presentada por la señora Carmen L. Vélez Morales y la señora Arleen Rivera Vélez.

Por los fundamentos que se exponen a continuación, se confirma el dictamen apelado.

**I**

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Demanda* sobre disolución de compañía de responsabilidad limitada, interpuesta por la parte apelante en contra de la señora Carmen L. Vélez Morales (en adelante, señora Vélez Morales), la señora Arleen Rivera Vélez (en adelante, señora Rivera Vélez), Velz & Pad Group, LLC (en adelante y en conjunto, parte apelada) y otros demandados de nombre desconocido.

Luego de varios trámites procesales, el 28 de enero de 2019, la parte apelante presentó la *Demanda Enmendada* con el propósito de incluir una causa de acción por daños y perjuicios. En esencia, sostuvo que, las partes habían llegado a un acuerdo para crear la compañía de responsabilidad limitada Velz & Pad Group, LLC, con el propósito de establecerse en la industria de restaurantes y alimentos. En específico, para comprar una franquicia de "Taco Maker". La parte apelante alegó que, la señora Vélez Morales y la señora Rivera Vélez se habían comprometido a obtener un préstamo personal con el fin de invertir en la compañía. Asimismo, afirmó que habían acordado que, mientras se diligenciaba el aludido préstamo personal, la parte apelante comenzaría a realizar inversiones en la compañía. La parte apelante aseguró que, desde marzo de 2017 hasta la presentación de su causa de acción, había invertido en la compañía la suma de $167,212.32. De igual manera, indicó que, la compañía fue incorporada sin su nombre, y que, posteriormente, la parte apelada enmendó el Certificado de Incorporación para incluir al señor Padilla Rosa.

De las alegaciones de la *Demanda Enmendada* también se desprende que, el 5 de septiembre de 2018, la parte apelante notificó que no le habían aprobado el préstamo personal y que por ello, no contaba con dinero para invertir en la compañía. La parte apelante sostuvo que, para el mes de noviembre de 2018, Comercial Centers

Management Realty (CCM) remitió una misiva dirigida a "Taco Maker" y a la parte apelada donde rescindió el contrato de arrendamiento del local en el que se proponían establecer el restaurante "Taco Maker". Asimismo adujo que, para diciembre de 2018, Taco Maker Inc. también remitió una misiva donde rescindió el contrato de franquicia para operar el restaurante en el pueblo de Hatillo. Por último, solicitó que se ordenara la disolución de Velz & Pad Group, LLC., que condenara a la parte apelada al pago solidario de la suma de $167,212.32 por concepto de la alegada inversión, al pago solidario de $200,000.00 en concepto de daños y lucro cesante, y el pago de costas, gastos y honorarios de abogado.

En respuesta, la parte apelada presentó la *Contestación a Demanda Enmendada y Reconvención*. En apretada síntesis, la parte apelada negó lo alegado por la parte apelante en la *Demanda Enmendada*. De igual manera, argumentó que, como parte de los acuerdos suscritos por las partes, la corporación solicitaría un préstamo comercial con el fin de atender los asuntos relativos al establecimiento de la franquicia de "Taco Maker" en el pueblo de Hatillo. Mencionó que, cuando el señor Padilla Guzmán se unió para la tramitación del establecimiento de la franquicia, se llevaron a cabo acuerdos relativos al diligenciamiento de un préstamo comercial y que, se le había informado que debía proveer sus estados financieros personales y un informe de crédito para la evaluación del caso. Adujo, además, que como parte de los aludidos acuerdos, se estableció que la parte apelada sería quien asumiría el pago total del mencionado préstamo comercial y que para ello, utilizaría sus propios dividendos o ganancias correspondientes a su participación en la corporación. Asimismo, acotó que, el préstamo comercial no pudo ser tramitado debido a que el señor Padilla Rosa no proveyó la información necesaria y requerida.

En lo que respecta a la reconvención, la parte apelada arguyó que, el señor Padilla Rosa mediante dolo y engaño había ocultado información relativa a su situación financiera. Añadió que, tal actuación tuvo como consecuencia la pérdida de la franquicia de "Taco Maker" puesto que, no se pudo obtener el préstamo comercial necesario para su establecimiento. Sostuvo, además que, debido a las alegadas actuaciones culposas de la parte apelante, había sufrido daños económicos al no poder culminar el proyecto y daños mentales y emocionales. A tales efectos, reclamó una suma no menor $100,000.00 por concepto de los alegados daños.

Así las cosas, la parte apelada interpuso la *Demanda Contra Tercero*, en contra del señor Efraín Padilla Guzmán (en adelante, señor Padilla Guzmán). Por su parte, el señor Padilla Guzmán presentó la *Contestación a Demanda Contra Tercero Enmendada*.

Posteriormente, la parte apelada presentó la *Moción en Solicitud de Sentencia Sumaria al Amparo de la Regla 36.2 de Procedimiento Civil*. Propuso dieciséis (16) hechos esenciales y pertinentes que, a su juicio, no se encontraban en controversia. Argumentó que, procedía que se dictara sentencia sumaria a su favor, en la medida en que no existían hechos en controversia y que se desestimara la *Demanda Enmendada*.

Por su parte, la parte apelante presentó la *Moci[ó[n en Oposici[ó]n a Sentencia Sumaria*. Sostuvo que, existían varios hechos que se encontraban en controversia y que, por ello, no procedía que se dictara sentencia sumaria. Por tanto, le solicitó al foro primario que declarara No Ha Lugar la solicitud de la parte apelada.

De otra parte, el señor Padilla Guzmán presentó la *Réplica a Moción en Solicitud de Sentencia Sumaria al Amparo de la Regla 36.2 de Procedimiento Civil de la Parte Demandada y Moción en Solicitud de Sentencia Sumaria al Amparo de la Regla 36.2 de Procedimiento Civil del Tercero Demandado*. Adujo que, procedía que se dictara

sentencia sumaria a su favor y que consecuentemente, se desestimara la demanda contra tercero interpuesta en su contra.

El 29 de marzo de 2022, la parte apelada presentó la *R[é]plica a Oposición a Sentencia Sumaria*. Mientras que, el 5 de abril de 2022, la parte apelante presentó la *Dúplica a R[é]plica en Oposici[ó]n a Sentencia Sumaria*. De igual manera, el 12 de abril de 2022, la parte apelada presentó la *Oposición a Sentencia Sumaria de la Parte Tercera Demandada*.

El 29 de junio de 2022, el foro *a quo* emitió *Resolución* donde determinó que no procedía resolver mediante sentencia sumaria, puesto que, existía una controversia medular en cuanto a ciertos hechos. Por tanto, declaró No Ha Lugar la solicitud de sentencia sumaria presentada por la parte apelada.

Los días 18, 19 y 20 de marzo de 2024, se celebró el Juicio en su Fondo. En este, desfilaron los testimonios del señor Padilla Rosa, de la señora Sonia Núñez Vélez, de la señora Vélez Morales, de la señora Rivera Vélez, y del señor Padilla Guzmán. Expuestas las posturas de las partes y presentada la prueba, el foro primario les concedió el término de sesenta (60) días para presentar un memorando de derecho que contuviera las determinaciones de hecho y conclusiones de derecho.

En cumplimiento con lo ordenado, los días 16, 17 y 20 de mayo de 2024, la parte apelante, el señor Padilla Guzmán y la parte apelada, presentaron sus respectivos memorandos de derecho.

Finalmente, el foro primario emitió la *Sentencia* cuya revisión nos ocupa. En virtud de esta, en primer lugar, resolvió que, la parte apelada no era responsable de la inversión realizada por el señor Padilla Rosa, según este reclamó. Entendió que, de la totalidad de la prueba presentada se desprendió que, la aportación económica acordada de la parte apelada sería mediante un préstamo de tipo comercial, el cual esta pagaría en su totalidad. Sin embargo, dicho

préstamo no pudo ser tramitado debido a que no se presentaron los estados financieros requeridos a los miembros de la corporación, en particular, los del señor Padilla Rosa.

En cuanto a la alegada inversión realizada por el señor Padilla Rosa, el foro primario resolvió que, el testimonio de este no le convenció y que, era insuficiente para demostrar que tal inversión fue efectivamente realizada a favor de la corporación. Explicó que, respecto a los cheques que dieron paso a la alegada inversión, de estos no surgía que su propósito fuese efectivamente, los trabajos en el local de Taco Maker. El foro de primera instancia reseñó que, la prueba presentada por las partes consistió, esencialmente, de sus propios testimonios debido a que la totalidad de los acuerdos fueron realizados de manera verbal.

Asimismo, el foro *a quo* determinó que, conforme al Art. 19.19 de la Ley Núm. 164-1009, *infra*, debido a que Velz & Pad Group, LLC. era una compañía de responsabilidad limitada, la parte apelada no respondía por los daños reclamados y que, fue la compañía quien asumió las obligaciones descritas en la *Demanda Enmendada*. De igual manera, en la *Sentencia*, el foro primario resolvió que, no procedía la reclamación de lucro cesante, de enriquecimiento injusto ni de actos propios.

En cuanto a la *Reconvención* presentada por la parte apelada, el Tribunal de Primera Instancia determinó que no se presentó prueba concreta que sustentara lo alegado en esta. Así como, que no fue presentada prueba de los alegados daños.

En su *Sentencia*, la primera instancia judicial resolvió lo siguiente:

> Este Tribunal estima que de la prueba presentada se desprende que la responsabilidad por los daños reclamados por cada parte debido a la no finalización del negocio acordado recae, en últimas instancias, en ellas mismas y su falta de comunicación efectiva y razonable en torno a las decisiones que como miembros de la corporación demandada se tomaron y la forma en

que estas se llevaron a cabo. Nótese aquí, nuevamente, que las alegaciones de las partes descansan en sus propios testimonios y la credibilidad, que en última instancia este Tribunal les conceda, y la falta total de evidencia acreditativa de estas. De esta forma, consideramos que, al igual que con las reclamaciones de la demanda de la parte demandante, no procede la reconvención de las demandadas.

Por último, estimamos que en vista de que lo que hemos expuesto sobre las improcedencias de las reclamaciones realizadas por las partes, no procede tampoco la demanda contra tercero presentada por las demandas [sic.] contra el tercero demandado Padilla Guzmán. En este extremo, valga resaltar que, si bien de la prueba presentada surge que en primera instancia este, junto a las demandadas, configuraron la creación de la compañía demandada con el fin de establecer un restaurante de la franquicia "Taco Maker", lo cierto es que este se retiró dando lugar a la entrada del demandante Padilla Rosa, quien continuó junto a las demandadas el negocio. Asimismo, tampoco la prueba de las demandadas fue suficiente para demostrar que este mediante dolo y engaño ocultó la información financiera del demandante Padilla Rosa que lo haga responsable ante las demandadas.

Por tanto, el Tribunal de Primera Instancia declaró No Ha Lugar la *Demanda Enmendada*, la reconvención incluida en la *Contestación a Demanda Enmendada* y la *Demanda Contra tercero Enmendada Conforme con las Disposiciones de la Regla 13.1 de las de Procedimiento Civil*.

Inconforme con lo resuelto, la parte apelante acudió ante este foro revisor mediante recurso de apelación y esgrimió los siguientes señalamientos de error:

- Erró el Tribunal de Primera Instancia al determinar que no se completó la tramitación de un préstamo tipo comercial por causas que no son exclusivamente imputables a las apeladas razón por la cual estas no responden por la inversión realizada por los apelantes.

- Erró el Tribunal de Primera Instancia al determinar que la inversión realizada por los apelantes no lo persuadía y la prueba presentada era insuficiente para demostrar su inversión.

- Erró el Tribunal de Primera Instancia al determinar que las apeladas no tenían que cumplir con su inversión en la corporación porque alegadamente su ofrecimiento fue hacer la inversión mediante un préstamo.

- Erró el Tribunal de Primera Instancia al determinar que no hubo relación causal entre el daño y la conducta culposa o negligente de las apeladas.

El 22 de noviembre de 2024, la parte apelante presentó la *Moi[ó]n Informando Transcripci[ó]n de la Prueba Oral*.

Mediante *Resolución* emitida el 4 de diciembre de 2024, entre otras cosas, le concedimos a la parte apelante un término de treinta (30) días para presentar la Transcripción de la Prueba Oral (TPO).

El 21 de febrero de 2025, la parte apelante presentó el *Alegato Suplementario*.

La parte apelada presentó el *Alegato Suplementario de la Parte Apelada* el 21 de marzo de 2025.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A. *Deferencia Judicial***

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 289 (2011); *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009). Bajo este supuesto, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos. *Pueblo v. Hernández Doble*, supra, pág. 864; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).

No obstante, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha

reiterado que, los tribunales apelativos no debemos intervenir con las determinaciones ni las adjudicaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Hernández Doble*, supra, pág. 864; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Santiago Montañez v. Fresenius Medical*, 195 DPR 476, 490 (2016); *Dávila Nieves v. Meléndez Marín*, supra, pág. 753; *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *SLG Rivera Carrasquillo v. AAA*, supra.

Como sabemos, "[l]a tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad." *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Véase, además, *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Umpierre Matos v. Juelle, Mejía*, 203 DPR 254, 275 (2019), citando a *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). Es por lo que, nuestra más Alta Curia ha definido la *discreción* como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Pueblo v. Rivera Montalvo*, supra, citando a *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016); *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435, citando a *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna." *Citibank et al. v. ACBI et al.*, supra, citando a *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435; *HIETel v. PRTC*, 182 DPR 451, 459 (2011); *Santa Aponte v. Srio.*

*del Senado*, 105 DPR 750, 770 (1977). Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997); *HIETel v. PRTC*, supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, supra.

## B. Ley General de Corporaciones de Puerto Rico

La Ley General de Corporaciones de Puerto Rico, Ley, Núm. 164-2009, según enmendada, 14 LPRA sec. 3501 *et seq.*, es la que "rige la existencia y vida jurídica de las corporaciones privadas en nuestra jurisdicción". *Colón y otros v. Báez y otros*, 2024 TSPR 104, 214 DPR ___ (2024). Es sabido que las corporaciones son entidades con personalidad jurídica propia, distinta e independiente a la de sus titulares, "quienes responderán de las resultas de la actividad de la organización hasta el monto de su inversión en la misma, pero no con sus bienes personales". Carlos Díaz Olivo, *Corporaciones: Tratado Sobre Derecho Corporativo*, 2ª ed. del autor 2016, pág. 15; *Multinational Ins. v. Benítez y otros*, 193 DPR 67, 76 (2015); *Colón y otros v. Báez y otros*, supra. El principio de responsabilidad limitada es la norma general a observar en todo procedimiento civil instado por un acreedor corporativo contra la persona de los accionistas de la entidad.

En lo pertinente, una compañía de responsabilidad limitada (CRL) "es una entidad no incorporada con personalidad jurídica propia, separada de los miembros que la constituyen" y organizada por virtud del Capítulo XIX de la Ley General de Corporaciones, *supra*; Díaz Olivo, *op. cit.*, pág. 569; 14 LPRA sec. 3951(e). El profesor Díaz Olivo expresa que, entre las características principales de esta entidad, figura la amplia flexibilidad contractual para "estructurar los asuntos internos de la empresa". *Íd.* A estos efectos, el contrato de la compañía de responsabilidad limitada (CCRL)

constituye la fuente primordial de regulación de la entidad; mientras que la Ley Núm. 164-2009 viene a suplir aquellas cuestiones omitidas en el CCRL. *Íd.*, pág. 570, 573; 14 LPRA sec. 3951(g).

En cuanto al contrato de la compañía de responsabilidad limitada, el tratadista Díaz Olivo esbozó lo siguiente:

> El CCRL también conocido como el acuerdo operacional, se define como el contrato escrito que adoptan los miembros de una CRL para regir los asuntos internos y [de] administración de la entidad. (…)

> El CCRL es la piedra angular sobre la que se estructura la CRL, pues constituye el acuerdo básico entre los miembros en donde se regulan los negocios y asuntos de la compañía. En ese sentido, el contrato de CRL es un documento crucial en toda CRL. La Asamblea Legislativa procuró dotar a los miembros de una CRL de flexibilidad total para configurar internamente la estructura de (*sic*) administrativa y económica que mejor se ajuste a sus expectativas de negocios y necesidades personales. El Capítulo XIX, en principio, establece una serie de normas supletorias que entran en operación en ausencia de disposición específica en el CCRL. Por consiguiente, al confeccionar el CCRL los miembros pueden diseñar e implantar internamente la estructura administrativa, operacional y financiera que mejor se acomode a sus expectativas. Díaz Olivo, *op. cit.*, pág. 573.

La CRL se nutre de las aportaciones prestadas por algunos o todos sus miembros, a través de una amplia gama de recursos, a saber: efectivo, propiedades, servicios, pagarés, u otra obligación de aportar efectivo propiedad o prestar servicios. 14 LPRA sec. 3980. La tenencia de un derecho económico en una CRL se denomina "interés" y conlleva tanto la participación en las ganancias como de las pérdidas. 14 LPRA sec. 3951(j).

En cuanto a la admisión de los miembros de una CRL, esta dependerá de lo dispuesto en el CCRL, y estará sujeta a la formación de la compañía y, de permitirlo el CCRL, al momento en que el registro de ésta refleje la admisión de más miembros. 14 LPRA sec. 3968 (A).

Cabe señalar que, una vez se constituye una CRL, su existencia es perpetua, salvo que otra cosa disponga el CCRL. El

Artículo 19.47 de la Ley Núm. 164-2009, *supra*, establece unas causas genéricas de disolución, tales como: una fecha cierta acordada, la ocurrencia de un evento específico previsto y consignado en el CCRL, por acuerdo de sus miembros conforme a sus participaciones, la inexistencia de miembros o por decreto judicial. 14 LPRA sec. 3997 (A)(1-5). En ausencia de un acuerdo, la Ley Núm. 164-2009, *supra*, dispone una salvaguarda de que la "muerte, retiro, renuncia, expulsión, quiebra o disolución de cualquier miembro o la ocurrencia de cualquier otro evento que termine la membresía continua de cualquier miembro no causará que la CRL sea disuelta o que sus negocios sean concluidos, y al momento de la ocurrencia de cualesquiera de dichos eventos, la CRL continuará su existencia sin ser disuelta". 14 LPRA sec. 3997 (B).

Como mencionáramos, la Ley Núm. 164-2009, *supra*, estatuye que una orden de un tribunal competente podrá disolver y concluir los negocios de una CRL, al palio del Artículo 19.48, que versa sobre la disolución judicial. 14 LPRA sec. 3997 (A)(5).

La referida disposición reza como sigue:[1]

Ante petición de un miembro o administrador, el Tribunal de Primera Instancia podrá ordenar la disolución de una CRL siempre que no sea razonablemente posible continuar los negocios de conformidad con el CCRL. 14 LPRA sec. 3998.

Así, pues, entre los eventos que el estatuto identifica capaces de provocar la disolución de la CRL, está la acción judicial. En cuanto a ésta, la Ley Núm. 164-2009, *supra*, confiere legitimación activa a los miembros y administradores de la CRL para instar la acción. Este derecho es renunciable. Díaz Olivo, *op. cit.*, págs. 587-588. Entre los criterios a considerar al evaluar la solicitud —los cuales han sido esbozados de tiempo en tiempo en jurisprudencia

---

[1] La norma se asemeja a la disposición de la Sección 18-802, Capítulo 18 del Título 6 de Delaware, que establece: "On application by or for a member or manager the Court of Chancery may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement".

persuasiva estadounidense— se encuentran aquellas circunstancias como, por ejemplo, que no haya acuerdos salvables en el voto de los miembros y el CCRL no prevea un remedio para sobrellevar el *impasse*. También podría ordenarse la disolución debido a la condición financiera de la CRL; o porque en realidad no exista un negocio que operar bajo sus cláusulas. Independientemente de las circunstancias fácticas presentes, éstas deben tener el efecto de que la continuación de la operación del negocio o el avance del propósito comercial establecido *no sean razonablemente factibles*.[2]  *Íd.*, pág. 587, que cita a *Fisk Ventures, LLC v. Segal,* 2009 WL 73957, 35 Del. J. Corp. L. 357 (Del. Ch. Jan. 13, 2009).

## C. *Responsabilidad extracontractual*

Como sabemos, en nuestro ordenamiento jurídico, la responsabilidad civil extracontractual emana del Artículo 1802 del Código Civil -aplicable al caso de autos- que, a tales efectos, dispone que "el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". 31 LPRA ant. sec. 5141[3]. *Sucn. Mena Pamias et al. v. Meléndez*, 212 DPR 758 (2023); *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 483 (2022); *Colón Santos v. Coop. Seg. Mult. P.R.* 173 DPR 170,177 (2008).  De manera análoga, el Artículo 1536 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 10801 *et seq.*, dispone que

---

[2] En *Fisk Ventures*, el tribunal expresó:

> For example, in *PC Tower,* this Court found that the relevant partnership agreement stated that the partnership's business purpose was to acquire land in the hope of making a future profit. The Court held that the partnership was unable to carry on its business in a reasonably practicable manner because there was (1) a depressed real estate market, (2) property debt was in excess of value, and (3) uncontradicted evidence of a heavily leveraged property where the rent payments were supposed to be forthcoming from a declared insolvent entity. Thus, because it was no longer reasonably practicable to use the partnership's property "for profit and for an investment," the Court ordered dissolution of the partnership.

*Fisk Ventures, LLC v. Segal, supra*, pág. 3.

[3] El derecho aplicable en el caso de epígrafe se remite al Código Civil de Puerto Rico de 1930, puesto que, la presentación de la *Demanda* y los hechos que dan base a esta tuvieron lugar antes de la aprobación del nuevo Código Civil de Puerto Rico, Ley 55-2020, según enmendada.

la persona que por culpa o negligencia cause daño a otra, viene obligada a repararlo.

Para que prospere una reclamación por daños y perjuicios al amparo del referido precepto legal, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *Inmb. Baleares et al. v. Benabe et al.*, 2024 TSPR 112, 214 DPR __ (2024); S*ucn. Mena Pamias et al. v. Meléndez*, supra, pág. 768; *Cruz Flores v. Hosp. Ryder Mem'l Inc*, supra, págs. 483-484; *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona. En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de daños: los especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos, y los generales, conocidos como daños morales. *Nieves Díaz v. González Massas*, supra, pág. 843.

La culpa o negligencia es falta del debido cuidado, esto es, no anticipar ni prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en tales circunstancias. S*ucn. Mena Pamias et al. v. Meléndez*, supra, pág. 768; *Montalvo v. Cruz*, 144 DPR 748, 755 (1998).

Cónsono con lo anterior, a través de la jurisprudencia observamos que un elemento esencial de la responsabilidad civil extracontractual es el factor de la previsibilidad. El deber de previsión no se extiende a todo riesgo posible, pues, es necesario examinar si un daño pudo ser el resultado natural y probable de un acto negligente. *Cruz Flores v. Hosp. Ryder Mem'l Inc*, supra, pág.

484.  Para determinar si el resultado era razonablemente previsible, es preciso acudir a la figura del hombre prudente y razonable, también conocida como el buen padre de familia, que es aquella persona que actúa con el grado de cuidado, diligencia, vigilancia y precaución que exigen las circunstancias. *Nieves Díaz v. González Massas, supra*, pág. 844.  Si el daño es previsible por éste, hay responsabilidad; sino es previsible, estamos generalmente en presencia de un caso fortuito. *Montalvo v. Cruz, supra,* a la pág. 756.

El deber de cuidado incluye, tanto la obligación de anticipar, como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. El deber de anticipar y prever los daños no se extiende a todo riesgo posible. *Íd.* Lo esencial en estos casos es que se tenga el deber de prever en forma general consecuencias de determinada clase. Sobre este particular, el Tribunal Supremo de Puerto Rico, ha sido enfático al expresar que sin la existencia de este "deber de cuidado mayor" no puede responsabilizarse a una persona porque no haya realizado el acto de que se trate. *Hernández v. Televicentro,* 168 DPR 803, 813-814 (2006).

Ahora bien, el elemento de la previsibilidad se halla íntimamente relacionado al segundo requisito: el nexo causal. En Puerto Rico rige la teoría de la causalidad adecuada, la cual postula que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Cruz Flores v. Hosp. Ryder Mem'l Inc,* supra, págs. 484-485; S*ucn. Mena Pamias et al. v. Meléndez,* supra, pág. 768.  En *Rivera v. S.L.G. Díaz,* 165 DPR 408, 422 (2005), nuestro más Alto Foro señaló que la relación causal, elemento imprescindible en una reclamación en daños y perjuicios, es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico. *Nieves Díaz v. González Massas,* supra*,* págs. 844-845. Conforme con lo anterior, un daño podrá ser considerado

como el resultado probable y natural de un acto u omisión negligente si luego del suceso, mirándolo retroactivamente, éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate. *Hernández v. Televicentro*, supra, pág. 814; *Cruz Flores v. Hosp. Ryder Mem'l Inc*, supra, pág. 485.

Para establecer la relación causal necesaria, no es suficiente que un hecho aparente ser condición de un evento, si éste regularmente no trae aparejado ese resultado. Esta normativa ha sido fundamentalmente desarrollada con el propósito de limitar la responsabilidad civil a aquellos casos en que la ocurrencia de un hecho dañoso sea imputable moralmente a su alegado autor, porque éste era una consecuencia previsible o voluntaria del acto negligente. *Soto Cabral v. E.L.A.*, 138 DPR 298, 317 (1995).

Al aplicar el principio de la causalidad adecuada, el Tribunal Supremo de Puerto Rico expresó que "la difícil determinación de cuándo existe nexo causal entre el daño producido por un acto delictivo de un tercero y la omisión de cumplir con la obligación de tomar precauciones, medidas de seguridad y protección, no puede 'resolverse nunca de una manera plenamente satisfactoria mediante reglas abstractas, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias'." *J.A.D.M. v. Centro Comercial de Plaza Carolina*, 132 DPR 785, 796 (1993).

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla a la controversia de epígrafe.

**III**

En su primer señalamiento de error, la parte apelante sostiene que, el foro de primera instancia incidió al determinar que no se completó la tramitación de un préstamo tipo comercial por causas que no eran exclusivamente imputables a la parte apelada, razón

por la cual esta no responde por la inversión realizada por la parte apelante.

Como segundo señalamiento de error, la parte apelante aduce que, el foro primario erró al determinar que, la inversión realizada por esta no le persuadía y la prueba presentada era insuficiente para demostrar su inversión.

En el tercer señalamiento de error propuesto por la parte apelante, esta alega que, el foro *a quo* incidió al determinar que la parte apelada no tenía que cumplir con su inversión en la corporación ya que, alegadamente su ofrecimiento fue hacer la inversión mediante un préstamo.

Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error de forma conjunta. Adelantamos que, no le asiste la razón. Veamos.

Se desprende del expediente que, las partes mediante acuerdo verbal decidieron adquirir una franquicia del restaurante de comida rápida "Taco Maker", para ser localizada en el pueblo de Hatillo, Puerto Rico. Con tal propósito, crearon la compañía de responsabilidad limitada, Velz & Pad Group LLC[4]. Según la prueba testifical, acordaron que, cada parte aportaría cierta cantidad de dinero para el establecimiento de la franquicia[5]. Cónsono con lo acordado, el señor Padilla Rosa desembolsó una suma de dinero para la compra de la franquicia, el alquiler del local y la compra del equipo. En específico, la suma de $10,000.00 aportada por el señor Padilla Rosa fue utilizada para comprar la franquicia, ya que, según su testimonio, se le había informado que ese sería el precio total de venta[6].

---

[4] Véase TPO de 18 de marzo de 2024, págs. 7-8.
[5] El señor Padilla Rosa declaró que, las partes habían acordado que cada una aportaría una suma de $10,000.00 para la compra de la franquicia de "Taco Maker". Véase TPO de 18 de marzo de 2024, pág. 32, líneas 3-13.
[6] Véase TPO de 18 de marzo de 2024, pág. 32, líneas 11-13; pág. 33, líneas 14-19.

Con el propósito de continuar con el establecimiento de la franquicia, las partes acordaron que aportarían una tercera parte del costo. Según se desprende del testimonio del señor Padilla Rosa, la parte apelada se comprometió a realizar un préstamo para efectuar la aportación que le correspondía, sin especificar qué tipo de préstamo realizaría.[7] De igual manera, el señor Padilla Rosa declaró que, mientras la parte apelada daba trámite al préstamo, las partes acordaron que este pagaría la primera fase de la construcción y así lo hizo[8]. Añadió que, debido a que la parte apelada se encontraba tramitando el préstamo, también pagó la segunda fase del proyecto[9]. Asimismo, atestiguó que, los pagos de la primera y segunda fase fueron emitidos mediante cheques.

Respecto a las aportaciones económicas, la señora Rivera Vélez atestiguó que, le había dejado claro a la parte apelante que, el préstamo a realizarse sería uno comercial[10]. Asimismo, declaró que, le habían solicitado a la parte apelante sus estados financieros puesto que, era un requisito para solicitar el préstamo comercial. Sin embargo, aseguró que, la parte apelante nunca le proveyó lo solicitado[11] y que, consecuentemente, no se pudo obtener el aludido préstamo[12].

Como mencionáramos, el foro *a quo* determinó que, la parte apelada no era responsable de la inversión realizada por el señor Padilla Rosa y entendió que, de la prueba surgía que, la aportación económica que realizaría la aparte apelada dependía de un préstamo comercial. Añadió que, se desprendía de la prueba que, el mismo no pudo ser tramitado debido a que no se presentaron los estados financieros de los miembros de la corporación.

---

[7] Véase TPO de 18 de marzo de 2024, pág. 43, líneas 10-19.
[8] Véase TPO de 18 de marzo de 2024, pág. 47, líneas 13-19.
[9] Véase TPO de 18 de marzo de 2024, pág. 48, líneas 1-5.
[10] Véase TPO de 19 de marzo de 2024, pág. 58, líneas 1-12.
[11] Véase TPO de 19 de marzo de 2024, pág. 67, líneas 14-16; pág. 70, líneas 8-19; pág. 72, líneas 15-20.
[12] Véase TPO de 19 de marzo de 2024, pág. 75, líneas 9-17.

Respecto a la alegada inversión realizada por el señor Padilla Rosa, el Tribunal de Primera Instancia no le mereció crédito. Pues, determinó que, el testimonio del señor Padilla Rosa no le convenció y que, era insuficiente para demostrar que tal inversión fue realizada para llevar a cabo los proyectos del local donde se establecería la franquicia.

El foro de primera instancia reseñó que, la prueba presentada por las partes consistió, esencialmente, de sus propios testimonios debido a que la totalidad de los acuerdos fueron realizados de manera verbal.

De acuerdo al derecho expuesto, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical.[13] Puesto que, los foros de primera instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos.[14] Sin embargo, la deferencia judicial no es absoluta y podrá ser preterida cuando medie pasión, prejuicio, parcialidad o error manifiesto.[15]

Mediante los tres señalamientos de error antes reseñados, la parte apelante atacó la apreciación de la prueba de la primera instancia judicial. Por tanto, es necesario aplicar el estándar de revisión judicial.

En primer lugar, de los testimonios presentados en el juicio surge que, la parte apelada había dejado claro que no contaba con dinero para invertir en la franquicia y que su aportación estaba condicionada a la aprobación de un préstamo comercial. Sin

---

[13] *Pueblo v. Hernández Doble*, supra, pág. 864; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 194.
[14] *Pueblo v. Hernández Doble*, supra, pág. 864; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219.
[15] *Pueblo v. Hernández Doble*, supra, pág. 864; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Rodríguez et al. v. Hospital et al.*, supra, pág. 908-909.

embargo, la parte apelada no pudo tramitar el préstamo debido a la inacción de la parte apelante al no entregar los estados financieros requeridos a todos los miembros de la corporación. Por tanto, el foro de primera instancia no incidió al determinar que la parte apelada no respondía.

Por otro lado, el foro primario no le mereció credibilidad al testimonio del señor Padilla Rosa en cuanto a la alegada inversión realizada para los trabajos en el local. Tal como explicó el foro de instancia, muchos de los cheques presentados como prueba por la parte apelante fueron dirigidos a familiares del señor Padilla Rosa. Es por lo que, no hay constancia de que estos fuesen expedidos con el propósito de emitir pagos por trabajos realizados en el local. De hecho, la parte apelante no acompañó prueba que estableciera de forma alguna un desglose de los trabajos realizados y el costo de ellos[16]. Pues, esta únicamente apoyó su argumentación con su testimonio y los cheques dirigidos a tales familiares.

Como bien determinó el Tribunal de Primera Instancia, las alegaciones de las partes reposan en sus propios testimonios y la credibilidad, que en última instancia, el foro primario les conceda, y "la falta total de evidencia acreditativa de estas".

En vista de ello, luego de una minuciosa evaluación de la totalidad de la prueba presentada que surge del expediente, determinamos que no quedó demostrado que el foro primario haya actuado mediando error manifiesto, pasión, prejuicio o parcialidad al evaluar a los testigos y la prueba que tuvo ante sí.

Consecuentemente, no vemos motivos para intervenir con el dictamen apelado.

Como último señalamiento de error, la parte apelante sostiene que, el foro apelado incidió al determinar que no hubo relación

---

[16] Véase TPO de 18 de marzo de 2024, págs. 140, líneas 2-5.

causal entre el daño y la conducta culposa o negligente de la parte apelada.

Adelantamos que, no le asiste la razón. Veamos.

Es altamente conocido que, para que prospere una reclamación por daños y perjuicios se requiere la concurrencia de tres elementos, **los cuales tienen que ser probados por la parte demandante**: (1) el acto u omisión culposa o negligente; (2) **la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado**; y (3) el daño real causado al reclamante.[17] (*Énfasis suplido*).

En materia de daños y perjuicios un elemento esencial de la responsabilidad civil extracontractual es el factor de la previsibilidad. Ahora bien, el elemento de la previsibilidad se halla íntimamente relacionado al segundo requisito: el nexo causal. En Puerto Rico rige la teoría de la causalidad adecuada, la cual postula que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general".[18] Al aplicar el principio de la causalidad adecuada, el Tribunal Supremo de Puerto Rico expresó que "la difícil determinación de cuándo existe nexo causal entre el daño producido por un acto delictivo de un tercero y la omisión de cumplir con la obligación de tomar precauciones, medidas de seguridad y protección, no puede 'resolverse nunca de una manera plenamente satisfactoria mediante reglas abstractas, sino que en los casos de duda ha de resolverse por el juez según su libre convicción, ponderando todas las circunstancias'."[19]

---

[17] *Inmb. Baleares et al. v. Benabe et al.*, supra; S*ucn. Mena Pamias et al. v. Meléndez*, supra, pág. 768; *Cruz Flores v. Hosp. Ryder Mem'l Inc*, supra, págs. 483-484.

[18] *Cruz Flores v. Hosp. Ryder Mem'l Inc*, supra, págs. 484-485; S*ucn. Mena Pamias et al. v. Meléndez*, supra, pág. 768.

[19] *J.A.D.M. v. Centro Comercial de Plaza Carolina*, supra, pág. 796.

Establecido lo anterior, le correspondía a la parte apelante demostrar la existencia del nexo causal entre el alegado daño y la alegada conducta culposa o negligente de la parte apelada. De la prueba documental y testifical no se desprende que la parte apelante lograra establecer dicho nexo causal.

En consecuencia, es inmeritorio el señalamiento de error propuesto por la parte apelante.

**IV**

Por los fundamentos que anteceden, se confirma el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones