ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| HONORIA MARÍA DÍAZ GARCÍA, ROSA JORGE DÍAZ y MARIELA JORGE DÍAZ, todas en su carácter de herederas y causahabientes de ERNESTO JORGE MONTES DE OCA, q.e.p.d.<br><br>Parte Apelante<br><br><br>v.<br><br><br>COMISIONADA DE INSTITUCIONES FINANCIERAS DE PUERTO RICO (Nathalia I. Zequeira Díaz); SECRETARIO DE JUSTICIA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO (Domingo Emanuelli Hernández)<br><br>Parte Apelada | KLAN202500467 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV04522<br><br><br>Sobre:<br><br>Reclamación de Fondos 7 LPRA. sec. 158 (g) |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de junio de 2025.

Comparecieron ante este Tribunal la parte apelante, la Sucesión de Ernesto Jorge Montes de Oca, compuesta por las Sras. Honoria María Díaz García, Rosa Jorge Díaz y Mariela Jorge Díaz (en adelante, la "Sucesión Montes de Oca" o las "Apelantes"), mediante recurso de apelación presentado el 23 de mayo de 2025. Nos solicitaron la revocación de la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 17 de marzo de 2025. Mediante la referida *Sentencia*, el TPI declaró "No Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por las Apelantes y "Ha Lugar" la "**Contestación a Sentencia Sumaria y en Solicitud de Sentencia Sumaria a Favor de la Comisionada de Instituciones Financieras**" presentada por la Oficina del Comisionado de Instituciones Financieras (en adelante, "OCIF" o

"Apelada"). En consecuencia, desestimó la causa de acción interpuesta por las Apelantes. Dicha *Sentencia* fue objeto de una "**Moción de Reconsideración**" que fue denegada por el TPI a través de una *Resolución* emitida el 24 de abril de 2025 y notificada a las partes el 25 de abril de 2025.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El 27 de mayo de 2022, la Sucesión Montes de Oca[1] presentó una "**Demanda**" de reclamación de fondos en virtud de la Ley Núm. 55 de 12 de mayo de 1933, según enmendada, mejor conocida como la "Ley de Bancos" (en adelante, la "Ley de Bancos"), en contra de la Comisionada de Instituciones Financieras de Puerto Rico, en su carácter oficial, Lcda. Natalia I. Zequeira Días, y del entonces Secretario de Justicia de Puerto Rico, en su carácter oficial, Hon. Domingo Emmanuelli Hernández (en adelante, los "Apelados" o la "OCIF"). Alegaron que el Sr. Ernesto Jorge Montes de Oca (en adelante, el "señor Montes de Oca") era el dueño de un cheque de gerente número 566779, expedido el 29 de noviembre de 2010 por el hoy extinto RG Premier Bank, posteriormente Scotiabank, por la cantidad de $30,460.00. Específicamente, señalaron que el 22 de abril de 2022, el señor Montes de Oca reclamó a la Oficina del Comisionado de Instituciones Financieras el pago de los fondos del referido cheque y que ésta emitió una *Resolución* el 29 de abril de 2022 mediante la cual informó que su reclamación estaba prescrita, por haber transcurrido el término de tres (3) años que establece la Ley de Bancos.

La *Resolución* añadió que el 12 de diciembre de 2016, Scotiabank entregó a la OCIF estos fondos, luego de determinar que era una cantidad no reclamada, según establece la sección 37(a) del mencionado estatuto, y los que a su vez fueron remitidos posteriormente al Departamento de Hacienda. Por consiguiente, el señor Montes de Oca alegó que a través de esta determinación advino en conocimiento que dicho dinero fue entregado a la OCIF y luego al Departamento

---

[1] El Sr. Ernesto Jorge Montes de Oca fue quien inicialmente compareció como demandante. No obstante, falleció posteriormente y fue sustituido en esta causa de acción por su viuda, la Sra. Honoria María Díaz García, y sus dos hijas, Rosa Jorge Díaz y Mariela Jorge Díaz. La petición fue enmendada para incluir como partes demandantes a la Sucesión del señor Montes de Oca. *Véase*, Apéndice del recurso de *apelación*, págs. 73-92.

de Hacienda. En vista de lo anterior, argumentó ante el TPI que la OCIF no realizó el procedimiento según lo establece la Ley de Bancos, pues, alegadamente, (1) los informes entregados a la OCIF sobre cantidades no reclamadas contenían información incompleta, (2) que existía ausencia de evidencia tendente a establecer que el señor Montes de Oca tenía conocimiento de la existencia de esos fondos a su favor, (3) el nombre correcto del señor Montes de Oca, (4) la cantidad de dinero en cuestión y (5) la fecha de la transacción. Sostuvo, además, que el aviso publicado no se ajustó a lo requerido en el estatuto al incumplirse con las disposiciones para catalogar los referidos fondos como abandonados y que contenía también información insuficiente, por lo que el mismo era deficiente. Manifestó que, como consecuencia de ello, el término prescriptivo de tres (3) años no comenzó a transcurrir.

Así las cosas, la Apelada presentó "**Contestación a la Demanda**" el 12 de septiembre de 2022. En resumen, alegó afirmativamente que el proceso prescrito en la Ley de Bancos sobre publicación de avisos, radicación de informes y entrega de fondos fue llevado a cabo conforme a la ley. Igualmente, expuso que el procedimiento de reclamación de fondos presentado ante la OCIF también fue realizado según lo establece el estatuto. Asimismo, argumentó que las determinaciones de las agencias merecen gran deferencia y, consiguientemente, los Tribunales deben tener cuidado al momento de intervenir con las mismas. Más adelante, el 17 de abril de 2023, el señor Montes de Oca presentó una "**Moción de Sentencia Sumaria**" mediante la cual alegó, en síntesis, que el procedimiento de publicación de avisos no fue realizado conforme a Derecho y, por tanto, no comenzó a transcurrir el término prescriptivo de tres (3) años estatuido en la Ley de Bancos. Asimismo, adujo que no existían hechos materiales o esenciales en controversia que impidiesen la adjudicación de la controversia de forma sumaria y que el asunto a resolverse era una cuestión de estricto derecho, a saber: si procedía la devolución de los fondos del señor Montes de Oca, o si, en efecto, su reclamación ante la OCIF estaba prescrita.

La Apelada presentó su "**Contestación a Sentencia Sumaria y en Solicitud de Sentencia Sumaria a Favor de la Comisionada de Instituciones Financieras**" el 20 de junio de 2023. En esencia, sostuvo que la responsabilidad

y obligación de determinar el vencimiento de las obligaciones y desde cuándo comienzan a transcurrir los términos para clasificar los mismos como abandonados y no reclamados, es de las instituciones bancarias, no de la OCIF. Argumentó, también, que la obligación de publicar avisos de la manera y con la información requerida, según establece la Ley de Bancos, es de la institución financiera y no de la OCIF. Añadieron que no existía ninguna controversia sustancial en cuanto a los hechos medulares o materiales del caso de epígrafe, por lo que correspondía dictar sentencia sumaria sin la celebración de un juicio. Expresó, además, que la única controversia era si procedía dejar sin efecto la *Resolución* notificada el 29 de abril de 2022 que denegó la entrega de los fondos transferidos por Scotiabank. Es decir, ambas partes concluyeron que se trataba de una controversia en derecho y no de hechos materiales.

Luego de varios incidentes procesales, entre los que figuró la solicitud de sustitución de partes y la presentación de la "**Demanda Enmendada**", el TPI dictó la *Sentencia* apelada mediante la cual declaró "No Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por la Sucesión Montes de Oca y "Ha Lugar" la "**Contestación a Sentencia Sumaria y en Solicitud de Sentencia Sumaria a Favor de la Comisionada de Instituciones Financieras**" presentada por la Apelada. Determinó que los hechos medulares sobre los cuales no existe controversia son los siguientes:

1. La División de Cuentas Inactivas está adscrita a la Oficina de Administración de la OCIF. Es la división encargada de recibir los informes, certificaciones y fondos abandonados que, a tenor con la Ley de Bancos, deben radicar las instituciones bancarias.

2. El 10 de agosto de 2016 Scotiabank rindió ante la División de Cuentas Inactivas de la OCIF el informe inicial sobre cantidades no reclamadas al 30 de junio de 2016 donde hizo constar las cantidades en su poder, mayores de un dólar ($1), no reclamadas por el depositante o por la persona con derecho a las mismas durante los cinco (5) años anteriores a la fecha del informe.

3. Surge del informe inicial rendido ante la División de Cuentas Inactivas de la OCIF el 10 de agosto de 2016 que Scotiabank incluyó los fondos de una cuenta por pagar a la orden de persona desconocida por la cantidad de $30,460.00 no reclamada.

4. El 7 de octubre de 2016, Scotiabank presentó en la División de Cuentas Inactivas de la OCIF, una certificación de los Avisos sobre Cantidades No Reclamadas publicados el 29 de agosto y 27 de septiembre de 2016 en un periódico de circulación general y en la página de Internet de la institución.

5. El 12 de diciembre de 2016 la División de Cuentas Inactivas de la OCIF recibió mediante cheque número 7950130962 por la cantidad de $2,081,447.02 emitido por Scotiabank a nombre del Secretario de Hacienda, junto con el informe final de las partidas incluidas en el total de ese cheque.

6. La División de Cuentas Inactivas le entreg[ó] el cheque número 7950130962 a la recaudadora para que se realizaran los trámites correspondientes para su depósito en la cuenta del Secretario de Hacienda.

7. El 22 de abril de 2022 Ernesto Jorge Montes de Oca reclamó a la Oficina del Comisionado de Instituciones Financieras el pago de los fondos del cheque de gerente 566779 emitido por el extinto RG Premier Bank.

8. La División de Cuentas Inactivas realizó una investigación de los fondos inactivos reportados identificando la cuantía a la que hizo referencia el reclamante.

9. De esa investigación, surge que los fondos del cheque 566779 fueron reportados como pertenecientes a un portador desconocido y que fueron entregados a la OCIF el 12 de diciembre de 2016.

10. El banco Scotiabank clasificó al titular del cheque de gerente en cuestión como "unknown" o desconocido.

11. El 29 de abril de 2022 la Oficina del Comisionado de Instituciones Financieras emitió una resolución en la cual denegó la reclamación por el fundamento de prescripción.

12. Existió un Cheque de Gerente expedido por el extinto RG Premier Bank con el nombre de Ernesto Jorge Montes de Oca.

13. El cheque era un cheque de gerente por el importe de $30,460.00.

14. El cheque tenía el número 566779.

15. El cheque fue expedido el 29 de noviembre de 2010.[2]

El foro de instancia concluyó en la *Sentencia* que "la responsabilidad de publicar los avisos respecto a las cuentas no reclamadas es estrictamente del banco donde se encuentran los depósitos y no de la OCIF".[3] Expresó que el argumento de las Apelantes con relación a que la OCIF no debió haber aceptado fondos de cuentas no reclamadas por no estar debidamente identificadas no tiene fundamento en virtud de la Ley de Bancos. El TPI determinó que los procedimientos realizados por la OCIF fueron llevados a cabo conforme dispone el estatuto y, por lo tanto, la reclamación estaba prescrita. Así pues, procedió a desestimar la causa de acción incoada.

---

[2] *Véase,* Apéndice del recurso de *apelación*, págs. 95-97.
[3] Íd., pág. 104.

Posteriormente, las Apelantes presentaron una "**Moción de Reconsideración**" el 1 de abril de 2025. Le peticionaron al foro de instancia que reconsiderara su *Sentencia* emitida, decretara "Con Lugar" la "**Demanda**" presentada, ordenara a la OCIF al pago de la reclamación de $30,460.00 y los intereses acumulados sobre la misma al tipo legal aplicable. Por su parte, la OCIF presentó el 21 de abril de 2025 una "**Oposición a Reconsideración de Sentencia**". El 25 de abril de 2025, el TPI emitió una *Resolución*, a través de la cual declaró "No Ha Lugar" la referida "**Moción de Reconsideración**".

Inconformes, las Apelantes presentaron el recurso de *apelación* que nos ocupa, mediante el cual le imputaron al TPI la comisión del siguiente error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO ORDENAR LA DEVOLUCIÓN DE LOS FONDOS PRODUCTO DEL CHEQUE DE GERENTE NÚMERO 566779 EXPEDIDO POR EL HOY EXTINTO RG PREMIER BANK EL 29 DE NOVIEMBRE DE 2010 POR EL IMPORTE DE $30,460.00 A PESAR DEL MANIFIESTO Y PATENTE INCUMPLIMIENTO CON LA §37(A) DE LA LEY DE BANCOS AL NO INCLUIR EN EL AVISO PUBLICADO EL NOMBRE DE ERNESTO JORGE MONTES DE OCA NI EL PUEBLO O LA CIUDAD DE LA ÚLTIMA DIRECCIÓN CONOCIDA DE ESTE, PREVIO AL DEPÓSITO DE ESTOS FONDOS EN LA OFICINA DEL COMISIONADO DE INSTITUCIONES FINANCIERAS.**

El 12 de junio de 2025, los Apelados presentaron su "**Alegato en Oposición**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia admisible que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678; Ramos Pérez v. Univisión, 178 DPR 200, 221 (2010).

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi *et al.*, 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. E.L.A. v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v.

Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. E.L.A., 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. J.A.D.M. v. Centro Com. Plaza Carolina, 132 DPR 785, 802-803 (1993). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". E.L.A. v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará

limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

**B.**

Con el propósito esencial de promover la estabilidad social y económica de las relaciones bilaterales, nuestro ordenamiento jurídico ha instituido, mediante el Código Civil, disposiciones legales que regulan la figura de la prescripción y las formas de interrumpirla.

El Artículo 1189 del Código Civil de Puerto Rico, según enmendado, regula la figura de prescripción y la define como "una defensa que se opone a quien no ejercita un derecho o acción dentro del plazo de tiempo que la ley fija para invocarlo". 31 LPRA sec. 9481. Además, dispone que "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley". Íd. A raíz de ello, el Tribunal Supremo de Puerto Rico ha expresado que, en ausencia de un acto interruptor, el titular de una causa de acción pierde su derecho a instalarla si no la ejerce en el plazo que establece la ley. Conde Cruz v. Resto Rodríguez *et al.*, 205 DPR 1043,

1067 (2020). Asimismo, nuestro máximo foro judicial ha señalado recientemente que, en nuestra jurisdicción, la prescripción es materia de derecho sustantivo y no procesal. Landrau Cabezudo y otros v. La Autoridad, 215 DPR ___ (2025); 2025 TSPR 7. Hay tres (3) maneras de interrumpir un término prescriptivo: (1) mediante la presentación de la causa de acción; (2) mediante una reclamación extrajudicial; y (3) por el reconocimiento de la deuda por parte del deudor. 31 LPRA sec. 9489.

En cuanto a la prescripción extintiva, el plazo o término provisto por la ley para el ejercicio de un derecho o acción juega un rol esencial en instrumentar el interés del estado en la solución rápida de las controversias. Birriel Colón v. Econo y otro, 213 DPR 80 (2023). Por esto, el plazo dispuesto está predicado en el objetivo de (1) proteger al deudor de reclamaciones tan remotas que lo posicionen en un estado de indefensión y (2) estimular el pronto reclamo de las obligaciones legales y procurar, por tanto, la tranquilidad del obligado contra la pendencia indefinida de una acción legal en su contra. Cintrón v. E.L.A., 127 DPR 582, 588-589 (1990). La prescripción es una institución que se fundamenta "en el imperativo de castigar la inercia en el ejercicio de los derechos" para con ello, evitar litigios de difícil adjudicación por su antigüedad. Xerox Corp. v. Gómez Rodríguez y otros, 201 DPR 945, 952 (2019); Zambrana Maldonado v. E.L.A., 129 DPR 740, 751 (1992). "Al fijar un plazo determinado en el cual se deberá instar una acción, se pone punto final a las situaciones de incertidumbre jurídica y se evita que las personas estén sujetas de forma indefinida a la contingencia de una reclamación." Conde Cruz v. Resto Rodríguez *et al.*, *supra*, pág. 1068. Así es que "la prescripción extintiva está basada en una presunción 'iuris tantum' de abandono, que admite prueba en contra, la existencia de una voluntad manifestada y probada, contraria a la prescripción, destruye aquella presunción, quedando impedida su consumación". Zambrana Maldonado v. E.L.A., *supra*, pág. 752.

**C.**

La Ley Núm. 4 del 11 de octubre de 1985, según enmendada, mejor conocida como la "Ley de la Oficina del Comisionado de Instituciones Financieras" (en adelante, "Ley Núm. 4"), se creó con el fin ulterior de proteger los intereses de las personas que están vinculadas a las industrias de la banca, de valores y de instituciones financieras en Puerto Rico por ser depositantes, acreedores,

accionistas u otro tipo de asociación. *Véase*, Exposición de Motivos de la Ley Núm. 4, *supra*.

A fin de cumplir con dicho propósito, se creó la Oficina del Comisionado de Instituciones Financieras, quien es la responsable de fiscalizar y supervisar las entidades financieras que operen o hagan negocios en Puerto Rico, incluyendo a las organizadas bajo la Ley Núm. 52 de 11 de agosto de 1989, según enmendada, mejor conocida como la "Ley Reguladora del Centro Bancario Internacional". Entre las facultades del Comisionado de la OCIF, se encuentran las siguientes, a saber: (1) reglamentar sus procedimientos y normas de trabajo; (2) atender, investigar y resolver querellas; (3) interponer cualquier remedio, acción o procedimiento legal que sea necesario o conveniente para hacer efectivos los propósitos de dicho estatuto; (4) llevar a cabo todas las acciones requeridas para lograr eficazmente los objetivos de la ley; e (5) imponer multas administrativas por las violaciones a las leyes que administra o a las reglas, reglamentos y órdenes aprobados o dictados por él. 7 LPRA sec. 2010.

Por otra parte, la Ley Núm. 55 de 12 de mayo de 1933, según enmendada, mejor conocida como la "Ley de Bancos" (en adelante, la "Ley de Bancos"), regula los bancos y los negocios bancarios en Puerto Rico. Además, fija los poderes del Comisionado de Instituciones Financieras relacionados con éstos. La sección 3 define el concepto "banco" como una corporación organizada y autorizada para operar bajo las disposiciones de la mencionada ley. 7 LPRA sec. 3 (c). Es decir, este término aplicará solamente a corporaciones que se dediquen a hacer negocios bancarios en Puerto Rico.

En lo pertinente, la sección 37(a) establece lo siguiente con respecto a las cuentas no reclamadas:

> **Todo banco o banco extranjero** vendrá obligado a rendir al Comisionado, anualmente y no más tarde del día 10 de agosto, un informe por medios electrónicos al 30 de junio anterior donde se haga constar las cantidades en poder de dichas instituciones, mayores de un dólar ($1), no reclamadas por el depositante o por la persona con derecho a las mismas **durante los cinco (5) años anteriores a la fecha del informe**, excluyéndose:
>
> […]
>
> (d) **Todo banco o banco extranjero** obligado a rendir el informe exigido por el primer párrafo de esta sección, publicará anualmente, una vez durante cada uno de los meses de agosto y septiembre en un periódico de circulación general y de publicación de por lo menos

seis días a la semana, un aviso bajo el título **"Aviso sobre Cantidades No Reclamadas en Poder de..."**. Dicho aviso deberá publicarse en forma de un listado general, ordenado alfabéticamente. Además, a partir del 1ro de enero de 2004, todo banco deberá publicar la información aquí requerida en su página del Internet y a partir del 1ro de enero de 2005, la Oficina del Comisionado de Instituciones Financieras requerirá que cada institución someta dicha información electrónicamente, de manera que la página del Internet de dicha Oficina pueda preparar un listado global mediante el cual cualquier ciudadano pueda verificar en forma alfabética la existencia de cantidades no reclamadas en cualquier institución financiera de Puerto Rico. En caso de que los nombres sean de personas naturales deberán ser ordenado, comenzando por los apellidos.

Tal aviso expondrá una lista consolidada, en orden alfabético, de los nombres de las personas que de acuerdo con el último informe rendido tengan derecho a reclamar cantidades montantes a cien dólares ($100) o más, el pueblo o la ciudad de la última dirección **conocida** de cada una de dichas personas, y una dirección en la Internet (*World Wide Web*) en la cual se podrá acceder copia de dicho aviso. Durante el mes de octubre siguiente, y no más tarde del día 10 de dicho mes, el banco o banco extranjero archivará con el Comisionado, una certificación de la publicación de tal aviso en un periódico de circulación general y en la página de Internet de la institución financiera o del tenedor. Copia de dicho aviso o del informe sobre cantidades no reclamadas se mantendrá expuesto para examen por cualquier persona interesada en un lugar visible y accesible de cada sucursal del banco concernido, desde la fecha de la publicación del aviso hasta el día 30 de noviembre de cada año. De igual manera, copia de dicho aviso o del informe sobre cantidades no reclamadas deberá publicarse por el banco o banco extranjero en la correspondiente página de Internet.

[…]

(e) Durante el mes de diciembre de cada año y no más tarde del día 10 de dicho mes, **todo banco o banco extranjero** que luego de publicar el aviso anteriormente exigido y de atender, conforme a derecho, las reclamaciones hechas, tenga en su poder cantidades no reclamadas, cualquiera que fuere su cuantía, hará entrega de las mismas al Comisionado [de Instituciones Financieras] quien las transferirá al Secretario de Hacienda para ser ingresadas en el Fondo General del Estado Libre Asociado de Puerto Rico**.**

No se sostendrá acción alguna contra el **banco o banco extranjero** para recuperar cantidades entregadas al Comisionado de acuerdo con las disposiciones de esta Ley o por alegados daños por tal entrega.

[…]

(g) **Dentro del término de tres (3) años, a partir de la fecha de la entrega al Comisionado de cualquier cantidad no reclamada**, cualquier persona que creyere tener derecho a dicha cantidad o parte de ella, podrá reclamarla al Comisionado, quien queda por la presente autorizado a reintegrarla a su dueño con una tasa de interés compensable igual a la aplicable al pago de sentencias del Estado sin exceder nunca un cuatro por ciento (4%), cuyos intereses serán pagaderos, sin computarse acumulativamente, de los referidos fondos abandonados y no reclamados, computada desde la fecha en que se entregó al Comisionado, previa comprobación del derecho del reclamante. Dentro del término de treinta (30) días a partir de la fecha de la notificación de la resolución denegatoria del

Comisionado, el reclamante podrá recurrir en acción civil contra el Comisionado ante el Tribunal de Primera Instancia, Sala Superior de San Juan, al cual por la presente se le confiere competencia exclusiva para conocer del procedimiento. 7 LPRA sec. 158 (énfasis suplido y en el original).

**III.**

En el presente caso, es importante destacar que las Apelantes reconocen que no existen controversias de hechos materiales y que la única controversia planteada es una de estricto derecho, a saber: si el plazo prescriptivo establecido en la Sección 37 (a) de la Ley de Bancos comienza a discurrir en aquellas instancias en las que la institución bancaria no cumple con detallar ni el nombre ni el pueblo o ciudad de la persona con derecho a reclamar una cuantía depositada por cinco (5) años bajo la custodia de dicha entidad financiera.

Luego de examinar el expediente ante nuestra consideración, así como los autos electrónicos del TPI, concluimos que las mociones de sentencia sumaria presentadas por las partes cumplen con los requisitos establecidos en la Regla 36 de las Reglas de Procedimiento Civil, *supra*, y la jurisprudencia antes citada. Procede entonces que este Tribunal revise si el TPI aplicó de manera correcta el derecho esbozado a esta controversia.

Las Apelantes nos solicitaron la revocación de la *Sentencia* recurrida, toda vez que el TPI declaró "No Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por éstas, declaró "Ha Lugar" la "**Contestación a Sentencia Sumaria y en Solicitud de Sentencia Sumaria a Favor de la Comisionada de Instituciones Financieras**" y desestimó la causa de acción presentada por la Sucesión Montes de Oca por entender que la misma estaba prescrita. En resumen, entienden que erró el foro de instancia al no ordenar la devolución de los $30,460.00, los cuales son producto del cheque de gerente número 566779, expedido el 29 de noviembre de 2010 por el extinto RG Premier Bank. Alegan que hubo un incumplimiento con la Sección 37(a) de la Ley de Bancos, *supra*, al omitir incluir en el aviso publicado el nombre del señor Montes de Oca, el pueblo o la ciudad de la última dirección conocida de éste con anterioridad a la entrega de los fondos a la OCIF y, por tanto, sostienen que el plazo prescriptivo de tres (3) años nunca comenzó a transcurrir. No nos convence su postura. Veamos.

Conforme hemos discutido anteriormente, la Ley de Bancos establece en su Sección 37(a) que **todo banco o banco extranjero** estará obligado a rendir un informe al Comisionado de la OCIF mediante el cual haga constar las cantidades en poder de dichas instituciones que sean mayores de un (1) dólar y que no hayan sido reclamadas por el depositante o por la persona con derecho a las mismas durante los cinco (5) años anteriores a la fecha del informe. Además, el inciso (d) de la mencionada sección establece el procedimiento que deben seguir las instituciones financieras cuando se trata de cuentas no reclamadas. En lo pertinente, dispone que **todo banco o banco extranjero** publicará anualmente, durante los meses de agosto y septiembre, en un periódico de circulación general y de publicación de por lo menos seis (6) días a la semana, un aviso titulado "Aviso sobre Cantidades No Reclamadas en Poder de...". El aviso deberá publicarse en forma de un listado general, el cual debe estar ordenado alfabéticamente. Igualmente, **todo banco** deberá publicar la información antes discutida en su página web. La OCIF requerirá que cada institución someta dicha información electrónicamente.

Añade el estatuto bajo discusión que tal aviso expondrá una lista consolidada, en orden alfabético, de los nombres de las personas que de acuerdo con el último informe rendido tengan derecho a reclamar cantidades montantes a cien dólares ($100) o más, el pueblo o la ciudad de la última dirección conocida de cada una de dichas personas y una dirección de internet en la cual se podrá acceder copia del aviso. Durante el mes de octubre, la institución bancaria archivará con el Comisionado de la OCIF una certificación de la publicación de este en el periódico y en el internet.

Durante el mes de diciembre de cada año, **todo banco o banco extranjero que luego de publicar el aviso requerido por la Ley de Bancos tenga en su poder cantidades no reclamadas, cualquiera que fuese su cuantía, las entregará al Comisionado, quien luego las transferirá al Secretario de Hacienda para ser ingresadas en el Fondo General**. Cualquier persona que crea tener derecho a alguna cantidad no reclamada, podrá exigirle su entrega a la OCIF dentro del término de tres (3) años, **a partir de la fecha de la entrega de los fondos al Comisionado.**

Al examinar detenidamente el legajo apelativo ante nuestra consideración, notamos que no hubo incumplimiento alguno con la Sección 37(a) de la Ley de Bancos, *supra*, por parte de la OCIF. Las Apelantes alegan que hubo un "manifiesto y patente incumplimiento" con la publicación del aviso al omitir incluir el nombre del señor Montes de Oca y datos sobre el último municipio o ciudad de éste. Nótese que surge del propio texto de la ley, que la responsabilidad de realizar la publicación del aviso en el periódico e internet recae única y exclusivamente en la institución bancaria, no en la OCIF. Además, no hay nada en la Ley de Bancos que establezca que la OCIF tiene la responsabilidad de velar por el cumplimiento estricto del procedimiento establecido en la Sección 37(a) por parte de las instituciones financieras. Tampoco hemos hallado provisión estatutaria que le imponga a la OCIF la obligación de rechazar fondos de cuentas no reclamadas cuando no estén debidamente identificadas en el informe de cuentas o aviso. La OCIF es responsable solamente de recibir los fondos que los bancos acrediten como no reclamados y remitirlos al Secretario de Hacienda.

Asimismo, con respecto al argumento de que el término prescriptivo de tres (3) años para realizar la reclamación ante el Comisionado no comenzó a transcurrir dado a las deficiencias alegadamente habidas en el aviso publicado y el cual está íntimamente atado con el error planteado por las Apelantes, debemos resaltar que el transcurso del mismo está subordinado a la entrega de las cuantías no reclamadas a la OCIF y no por el cumplimiento adecuado del procedimiento regulado en esta sección. Así lo establece el cuerpo estatutario citado. La OCIF no tiene la facultad legal para cuestionar, auditar, fiscalizar o de otra manera evaluar si, en efecto, las cantidades reportadas como abandonadas o no reclamadas lo están. No nos convence el argumento esgrimido por el Apelante, a los efectos de que había una hoja de cotejo que presuntamente demostraba que la OCIF conocía de los defectos en la publicación que hizo Scotiabank. Lo único que se desprende del documento es que la OCIF se cerciora de que la institución bancaria cumplió con publicar como tal.

El término prescriptivo bajo estas circunstancias comenzó a transcurrir tan pronto Scotiabank entregó al Comisionado de la OCIF las cantidades no reclamadas el 12 de diciembre de 2016. Cabe destacar que el propósito de la

figura de la prescripción es castigar la inercia en el ejercicio de los derechos. Además, recordemos que el cheque de gerente fue expedido en el 2010. Scotiabank hizo la entrega de estos fondos a la OCIF en el 2016, pues desde el 2010, y antes de la publicación del aviso, el dinero no fue reclamado por el señor Montes de Oca.

En suma, concluimos que de los autos no se desprende que el TPI haya cometido el error planteado por las Apelantes. Al contrario, surge del caso de epígrafe que la OCIF cumplió con las exigencias que la ley le requiere.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones